UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA E. EISEN,<br><br>               Plaintiff,<br><br>      v.<br><br>ANDREW M. CUOMO, Governor of New York, in his official capacity, PETER S. KOSINSKI, Co-Chair of the New York State Board of Elections, in his official capacity, DOUGLAS A. KELLNER, Co-Chair of the New York State Board of Elections, in his official capacity, and ANDREW J. SPANO, Commissioner of the New York State Board of Elections, in his official capacity,<br><br>               Defendants. | Case No.: 7:20-cv-05121<br><br><br>**COMPLAINT** |

Plaintiff, Joshua E. Eisen, in his capacity as an independent candidate for the United States House of Representatives in New York's 17th congressional district and as a registered voter in New York, by and through his attorneys, Venable LLP, files this Complaint against Defendants Andrew M. Cuomo, Governor of New York, in his official capacity, Peter S. Kosinski, Co-Chair of the New York State Board of Elections, in his official capacity, Douglas A. Kellner, Co-Chair of the New York State Board of Elections, in his official capacity, and Andrew J. Spano, Commissioner of the New York State Board of Elections, in his official capacity (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to declare unconstitutional, enjoin and/or modify New York's in-person signature collection and witnessing requirements for independent candidates seeking to

qualify for the November 3, 2020 general election in light of the current public health emergency caused by COVID-19.

2.	Plaintiff alleges that New York's ballot access procedure for independent candidates, as modified by Governor Cuomo's Executive Order 202.46 issued on June 30, 2020, violates rights guaranteed to him by the First and Fourteenth Amendments to the United States Constitution.

**PARTIES**

3.	Plaintiff, Joshua E. Eisen, is a resident of the town of Harrison, New York, and is an independent candidate for the United States House of Representatives in New York's 17th congressional district.

4.	Defendant, Andrew M. Cuomo, is the Governor of New York and possesses emergency power to act during emergencies and times of crisis, like that with the coronavirus.

5.	Defendant, Peter S. Kosinski, is Co-Chair of the New York State Board of Elections and is empowered to enforce and administer New York's election laws, including the signature requirements for independent candidate petitions being challenged in this action.

6.	Defendant, Douglas A. Kellner, is Co-Chair of the New York State Board of Elections and is empowered to enforce and administer New York's election laws, including the signature requirements for independent candidate petitions being challenged in this action.

7.	Defendant, Andrew J. Spano, is Commissioner of the New York State Board of Elections and is empowered to enforce and administer New York's election laws, including the signature requirements for independent candidate petitions being challenged in this action.

**JURISDICTION AND VENUE**

8. Jurisdiction in this case is predicated on 28 U.S.C. § 1331, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

**FACTS**

a. **Independent Candidate Nomination Process**

10. Plaintiff is an independent candidate for the United States House of Representatives in New York's 17th congressional district and will be required to qualify to be on the November 3, 2020 General Election ballot in the manner described as follows.

11. N.Y. Election Law § 6–100, et seq. sets forth the rules and procedures governing the designation and nomination of candidates.

12. Independent candidates for Congress are required by statute to file independent nominating petitions containing the signatures of 3,500 registered voters in order to qualify to be placed on the general election ballot. *Id*. § 6–142(2)(e).

13. The name of a registered voter signing an independent nominating petition will not be counted if that person's name appears upon another valid and effective petition designating or nominating a different person for the same office. *Id*. §6-138(1).

14. New York requires that nominating petitions "set forth in every instance the name of the signer, his or her residence address, town or city . . . and the date when the signature is affixed." *Id*. §§ 6–138(2); 6-130.

15. New York requires independent nominating petitions to be "signed in ink" by registered voters. *Id*. § 6–140(1)(a).

16. A witness attestation is appended to the bottom of each sheet of an independent nominating petition, requiring an in-person witness to attest that each of the signatures on the nominating petition were subscribed "in [the witness's] presence." *Id*. § 6–140(1)(b).

17. The nomination process outlined by statute requires the application of a "wet" signature and in-person witnessing of that application, necessitating close contact between petition circulators and thousands of members of the voting public.

18. Solicitation and collection are two distinct features of the nominating process. Persons soliciting signatures, consequently, must engage in a colloquy with prospective signers regarding their eligibility to sign, and only collect signatures from those who are eligible to sign. As a result, solicitation naturally includes contact with far more people than the number of signatures required to be collected for nomination.

19. Collecting signatures by hand on paper nominating petitions is inherently burdensome, labor-intensive and inefficient as a means of demonstrating voter support. Many signatures are invalidated due to illegibility, missing information and other technical defects. This obliges candidates to collect 25-50 percent more signatures than the requirement, to account for those that may be invalidated.

20. Gathering signatures during the COVID-19 outbreak endangers not only the health but also the lives of petition-circulators, potential signers, and the public at large.

21. Even if it were feasible to safely gather signatures during the current public health emergency, it is unlikely that petition-circulators would be able to gather signatures in a safe and efficient way because there are fewer people congregating in public places and fewer people are likely to open their doors to strangers who come knocking.

**b. New York State's Response to COVID-19**

22. On March 7, 2020, Governor Cuomo declared a "State disaster emergency . . . effective until September 7, 2020" in response to the COVID-19 pandemic, pursuant to the emergency powers granted in N.Y. Executive Law § 28. *See* EXECUTIVE ORDER 202.

23. Executive Order 202 "authorize[d] all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety." *Id*.

24. On March 14, 2020, Governor Cuomo issued Executive Order 202.2, which temporarily suspended or modified "any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster. . ." *See* EXECUTIVE ORDER 202.2.

25. On March 19, 2020, Governor Cuomo issued Executive Order 202.7, authorizing New York notaries to witness and notarize documents signed via remote audio-video technology. *See* EXECUTIVE ORDER 202.7.

26. On March 30, 2020, Governor Cuomo issued Executive Order 202.13, stating that "[a]ll instruments that are signed and delivered to the superintendent under the New York Banking Law (the "Banking Law"), and are required to be verified or acknowledged under the Banking Law, may be verified or acknowledged by including standard verification or acknowledgement language in the instrument and transmitting a legible copy of the signed instrument by fax or electronic means." *See* EXECUTIVE ORDER 202.13.

27. On April 7, 2020, Governor Cuomo issued Executive Order 202.14, stating that "[f]or the purposes of Estates Powers and Trusts Law (EPTL) 3-2.1(a)(2), EPTL 3-2.1(a)(4), Public Health Law 2981(2)(a), Public Health Law 4201(3), Article 9 of the Real Property Law, General Obligations Law 5-1514(9)(b), and EPTL 7-1.17, the act of witnessing that is required under the aforementioned New York State laws is authorized to be performed utilizing audio-video technology" provided that certain conditions are met. *See* EXECUTIVE ORDER 202.14.

28. On April 18, 2020, Governor Cuomo issued Executive Order 202.20, stating that "[a]ny issuance of a marriage license application, marriage license, or witnessing or solemnizing of the marriage ceremony, that is required under New York State law is authorized to be performed utilizing audio-video technology" provided that certain conditions are met. *See* EXECUTIVE ORDER 202.20.

   c. **New York State's Modifications to the Candidate Nomination Process Pursuant to Governor Cuomo's COVID-19 Executive Orders**

29. On March 14, Governor Cuomo issued Executive Order 202.2, which suspended the collection of signatures on designating petitions of candidates seeking the nomination of a major political party as of March 17, 2020 and reduced by 70 percent the number of signatures that major party candidates were required to obtain. For major party candidates for Congress, Executive Order 202.2 reduced the number of required signatures on designating petitions from 1250 to 375 signatures.

30. Executive Order 202.2 did not reduce the number of signatures that independent candidates were required to obtain on their nominating petitions, and it did not change the time period for circulating petitions or the date by which independent candidates were required to file those nominating petitions.

6

Case 7:20-cv-05121-PMH   Document 1   Filed 07/03/20   Page 7 of 16

31. On March 30, 2020, Governor Cuomo issued Executive Order 202.13 which provides, in pertinent part, that the "[c]irculation, filing, and collection of any designating petitions, or independent nominating petitions for any office that would otherwise be circulated or filed pursuant to the Election Law, Education Law or any other consolidated law for any office commencing March 31, 2020 are hereby postponed." *See* EXECUTIVE ORDER 202.13.

32. Following Governor Cuomo's mandatory postponement of independent nominating petition circulation pursuant to Executive Order 202.13 on March 30, 2020, neither Governor Cuomo nor the New York State Board of Elections provided any guidance with respect to the proper procedures for independent candidates to obtain ballot access for the November 3, 2020 General Election.

33. On May 1, 2020, Governor Cuomo issued Executive Order 202.26, which "eliminat[ed] any minimum threshold of signatures required" on nominating petitions for candidates for the board of education in city school districts and union free school districts. *See* EXECUTIVE ORDER 202.26. In the same Executive Order, Governor Cuomo stated that "due to the prevalence and community spread of COVID-19, that the potential for contraction of the COVID-19 virus shall be deemed temporary illness" for purposes of justifying a request for an absentee ballot for such school board elections.

34. On June 30, 2020, Governor Cuomo issued Executive Order 202.46, which rescinded Executive Order 202.13 with respect to the postponement of the circulation of independent nomination petitions and opened the circulation period for such petitions to begin the following day, on July 1, 2020. *See* EXECUTIVE ORDER 202.46.

35. Executive Order 202.46 provides that "independent nominating petitions for an office to be filled at the time of the general election or any village election shall be filed between

7

July 27 and July 30, 2020," and further provides that "[a] signature made earlier than July 1, 2020, or later than July 20, 2020, shall not be counted" toward the minimum signatures required for nomination. *Id.*

36.  Executive Order 202.46 provides, in relevant part, that "[f]or any election in 2020, the signature requirements on an independent nominating petition for an independent nomination for the general election for any office that is not determined by a statewide election shall be . . . a number equal to seventy percentum of the statutory minimum number provided for by subdivision 2 of section 6-142 of the election law." This provision effectively reduces the number of signatures required for an independent candidate to be placed on the ballot by only 30 percent, leaving in place a requirement that independent candidates collect at least 2,450 valid signatures in order to be placed on the ballot. *Id.*

37.  The percentage reduction in required signatures for major party candidate designating petitions pursuant to Executive Order 202.2 was 70 percent, whereas the percentage reduction in required signatures for independent candidate petitions pursuant to Executive Order 202.46 is only 30 percent.

38.  Major party candidates began gathering signatures for their designating petitions on February 25, 2020, more than a week before Governor Cuomo declared a State disaster emergency and issued Executive Order 202 on March 7, 2020. This enabled petition circulators for major party candidates to gather signatures without restrictions prior to state and local shutdowns going into effect.  Meanwhile, independent candidates must gather significantly more signatures during an active State disaster emergency and over a shorter period of time compared to that afforded to major party candidates.

8

### d. The Current Independent Candidate Nomination Process Endangers Public Health Without Justifiable Government Interest

39. The independent candidate nomination process, as modified by Executive Order 202.46, needlessly exposes candidates, their supporters, and the general public to risks associated with the COVID-19 pandemic with no justifiable countervailing government interest.

40. It bears emphasis that COVID-19 is highly infectious and transmitted through in-person contact and contact with surfaces on which bodily fluids from an infected person are present. A fairly high percentage of carriers are asymptomatic, meaning that persons engaging in the signature collection process or providing a signature may not know they are infected, thereby unknowingly exposing others to infection.

41. As an example of the health risks related to closely interacting with the public during the pandemic, Orangetown Deputy Supervisor Michael Lawler, who is running for State Assembly in District 97 as a Republican, contracted COVID-19 during the petition gathering period. *See Orangetown Deputy Supervisor Michael Lawler Details Battling COVID-19*, ROCKLAND REPORT (April 14, 2020), *available at* https://rocklandreport.com/orangetown-deputy-supervisor-michael-lawler-details-battling-covid-19/. Similarly, George Santos, a Republican candidate for Congress in New York's 3rd congressional district, also contracted COVID-19 during the petitioning period. *See* Rose Weldon, *Suozzi challenger tests positive for coronavirus*, THE ISLAND NOW (March 23, 2020), *available at* https://theislandnow.com/rop/suozzi-challenger-tests-positive-for-coronavirus/.

42. A significant number of New Yorkers continue to disregard emergency directives and state and local social distancing guidelines, increasing the possibility of a spike in positive COVID-19 cases. For instance, in Rockland County, which is entirely within the borders of New York's 17th congressional district, county officials recently announced a cluster of multiple

9

positive COVID-19 cases originating from a single house party in mid-June attended by over 100 people. Many attendees at the party refused to talk to county contact tracers and were subsequently subpoenaed by county officials for information. *See* Ed Shanahan, *Party Guests Wouldn't Talk After 9 Tested Positive. Then Subpoenas Came*, N.Y. TIMES (July 1, 2020), *available at* https://www.nytimes.com/2020/07/01/nyregion/rockland-coronavirus-party.html. These occurrences only increase the chances Plaintiff and his petition circulators would be exposed to individuals who are positive for COVD-19 but asymptomatic and unaware they are sick. An uptick in publicity about such "super-spreader" events also makes it more likely that voters residing in the 17th congressional district will refuse to open their doors to Plaintiff and his petition circulators.

43. Certain demographic groups and persons with medical conditions must limit their direct contact with third parties – even as some restrictions ease. The result, consequently, is that senior citizens and others (including anyone living in an assisted living facility) will be excluded from participating in the nomination process if the current system is not modified.

44. In response to recent spikes in incidences of COVID-19 nationally, New York has delayed aspects of its reopening plan, and continues to enforce strict social distancing protocols.

e. **The COVID-19 Pandemic Impedes Direct Collection of Signatures**

45. The recent experience of some major party candidates in collecting signatures for New York's primary election ballot in March 2020 highlights the impediments to soliciting and collecting signatures during a pandemic.

46. Specifically, members of the public are reluctant to participate in conversations regarding signing a petition, never mind actually perform the physical act of signing the petition. In Plaintiff's case, he and his petition circulators must participate in a conversation with a

potential signer prior to acquiring a signature to determine the person's eligibility to sign in the first place. As stated above, independent candidate petitions may not include signatures of individuals who have already signed a designating or nominating petition for any other candidates in the same race, so it is virtually impossible to avoid an up-close conversation for Plaintiff and his petition circulators.

47. Additionally, this fact places independent candidates at a distinct disadvantage, as independent candidates do not have an established network of party supporters. As a result, independent candidates have to rely, at least in part, on approaching persons who do not personally know the candidate – a bad situation in the current context.

48. In addition to state and local restrictions, religious congregations such as churches, synagogues, and mosques, as well as many community facilities, multi-family dwellings, condominiums, and apartment buildings have internal policies restricting or prohibiting non-members or non-residents from entry due to the current COVID-19 pandemic, thereby eliminating traditional large congregating places for Plaintiff and his circulators to gather the requisite number of signatures for ballot access. In fact, since the COVID-19 pandemic began, Plaintiff has volunteered his time to safely deliver thousands of meals to these community facilities and buildings to people in need, and in every instance, he is required to leave those meals at the door in a non-contact delivery. Any attempt by Plaintiff or his circulators to gather in-person signatures from individuals residing or congregating in such spaces, despite their wearing masks, would be met with swift opposition and they would be denied entry.

### f. Other States Have Adopted Remote Petition Signatures

49. Other states in this situation have instituted common-sense modifications to ballot nomination processes as a result of COVID-19. For example, Florida,[1] New Jersey,[2] Utah,[3] Minnesota,[4] Michigan,[5] Massachusetts,[6] and Rhode Island[7] allow petitions to be signed and verified electronically. Vermont has entirely suspended its signature requirement for elections in 2020.[8]

50. Denver, Colorado and the District of Columbia have also implemented a web-enabled application called E-Sign, which enables petition circulators to collect signatures on electronic tablets. These web-based platforms are integrated with the jurisdiction's voter rolls, and thus validate signatures automatically, eliminating the need to collect more signatures than the statutorily required number.

51. The Connecticut Secretary of State on March 28, 2020 formally recommended to the Connecticut Governor and responsible government officials that "[f]or the general election, my recommendation is to again eliminate any path to ballot access via petitions as a minor party or petitioning candidate for the November general election ballot. Instead, grant automatic ballot

---

[1] Secretary of State Laurel M. Lee Announces Business Annual Report Filing Deadline Extension and Changes to Candidate Petition and Qualifying Processes (Apr. 6, 2020), https://dos.myflorida.com/communications/pressreleases/2020/secretary-of-state-laurel-m-lee-announces-business-annual-report-filing-deadline-extension-andchanges-to-candidate-petition-and-qualifying-processes/.

[2] Governor Murphy Announces Changes to Upcoming New Jersey Elections in Response to COVID-19 (Mar. 19, 2020), https://www.nj.gov/governor/news/news/562020/20200319a.shtml.

[3] Gov. Herbert Suspends Sections of Utah Statute Regarding Signature Gathering (Mar. 26, 2020), https://governor.utah.gov/2020/03/26/gov-herbert-suspends-sections-of-utah-statute-regarding-signature-gathering/.

[4] Governor Tim Walz signed HF3429 into law, authorizing general election candidates to submit filing forms and petitions electronically.

[5] *See* https://www.mlive.com/public-interest/2020/05/signatures-required-to-run-for-some-offices-in-michiganreduced.html.

[6] *See* https://www.courthousenews.com/top-massachusetts-court-green-lights-e-signatures-for-election-canvassing/.

[7] *See* Katherine Gregg, *Judge: No compelling state interest in forcing candidates to gather signatures in person*, PROVIDENCE JOURNAL (June 23, 2020), *available at* https://www.providencejournal.com/news/20200623/judge-no-compelling-state-interest-in-forcing-candidates-to-gather-signatures-in-person.

[8] H. 681, 2019-2020 Gen. Assemb., Adjourned Sess. (Vt. 2020).

12

access for all races in November to any third parties that already have statewide ballot access, currently the Green Party, the Independent Party, the Libertarian Party, and the Working Families Party." *See* Christopher Keating, *Lamont Executive Order Changes Signature Rules for Political Candidates Trying to Get on Ballots*, HARTFORD COURANT (May 13, 2020), *available at* https://www.courant.com/coronavirus/hc-news-coronavirus-political-candidates-signatures-20200513-bxmp6iodovd6xebf6lf75mhcbe-story.html.

52. Arizona had already implemented online petitioning prior to the current pandemic, *see* ARIZONA SECRETARY OF STATE: CITIZEN CLEAN ELECTIONS COMMISSION, WELCOME TO E-QUAL[9] ("In Arizona, candidates are required to obtain a minimum number of petition signatures to appear on a ballot. Voters interested in assisting Statewide and Legislative candidates can now sign a petition electronically.").

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – First Amendment)

53. Plaintiff realleges the allegations contained in the preceding paragraphs.

54. The foregoing allegations demonstrate there is an actual controversy for this Court to resolve.

55. Under present circumstances, New York's ballot access requirements for independent candidates, as modified by Executive Order 202.46, violate rights guaranteed to Plaintiff by the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

56. The emergency measures ordered by the State of New York and local governments overlay the ballot access requirements in the Election Law, rendering the ballot

---

[9] *See* https://apps.azsos.gov/equal/.

access requirements for independent candidates a severe burden on Plaintiff's access to the November 2020 General Election ballot.

57. Plaintiff is suffering immediate and irreparable harm as a result of the State of New York's ballot access laws and the emergency orders.

58. Plaintiff has no adequate remedy at law other than this action for declaratory and equitable relief.

59. The harm will continue unless declared unlawful and enjoined by this court.

## SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 – Equal Protection)**

60. Plaintiff realleges the allegations contained in the preceding paragraphs.

61. Under present circumstances, New York's ballot access requirements for independent candidates who seek a place on the November 2020 General Election ballot through the independent nominating petition process violate Plaintiff's and his supporters' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. A declaratory judgment that New York's requirements for independent candidate ballot access, as modified by Executive Order 202.46, violates the First and Fourteenth Amendments to the United States Constitution as applied to the current COVID-19 pandemic and the 2020 General Election, insofar as those requirements create an unreasonable burden on qualification for independent candidates to appear on the ballot that fails to track a legitimate government interest, particularly where there are less onerous and much safer options available;

b. Temporarily, preliminarily, and permanently restrain and enjoin Defendants from enforcing the independent nominating petition requirements contained in New York's Election

Law, as modified by Executive Order 202.46, for the 2020 election; or lesser relief, including but not limited to (1) prohibiting enforcement of New York's in-person signature and witnessing requirements for independent candidates for office for New York's November 3, 2020 general election; (2) eliminating the minimum signature threshold for independent candidates altogether, like Governor Cuomo did for school board elections under Executive Order 202.26; (3) extending the time period and deadline for circulating and submitting independent nominating petitions; (4) directing Defendants to develop at their expense safe, timely, efficient and realistic procedures and practices for independent candidates to gather and verify signatures from voters electronically and submit signed petitions electronically to the state and county boards of elections; and, (5) reducing the number of required signatures on independent nominating petitions to, at the very least, match the 70 percent reduction afforded to major party candidates under Executive Order 202.2.

   c.  Award Plaintiff litigation costs and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, as against any Defendants who actively litigate in opposition to the relief sought herein; and,

   d.  Award such other relief as the Court deems just and proper.

Dated: July 3, 2020

Respectfully submitted,

VENABLE LLP

By:   */s/ Michael A. Guerra*
    Michael A. Guerra
    Rockefeller Center
    1270 Avenue of the Americas, 24th Floor
    New York, NY 10020
    Tel: (212) 808-5670
    Fax: (212) 307-5598
    MAGuerra@Venable.com

    -and-

    James E. Tyrrell III*
    Jacob P. Tully*
    600 Massachusetts Avenue NW
    Washington, DC 20001
    Tel: (202) 344-4522
    Fax: (202) 344-8300
    JETyrrell@venable.com

    *Attorneys for Plaintiff Joshua E. Eisen*

    *Applications for pro hac vice admission forthcoming.