**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSHUA E. EISEN,

Plaintiff,

v.

ANDREW M. CUOMO, Governor of New York, in his official capacity, PETER S. KOSINSKI, Co-Chair of the New York State Board of Elections, in his official capacity, DOUGLAS A. KELLNER, Co-Chair of the New York State Board of Elections, in his official capacity, and ANDREW J. SPANO, Commissioner of the New York State Board of Elections, in his official capacity,

Defendants.

Case No.: 7:20-cv-05121-PMH-LMS

**DECLARATION OF PLAINTIFF JOSHUA E. EISEN**
**<u>IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION</u>**

Pursuant to 28 U.S.C. § 1746, Joshua E. Eisen hereby declares as follows:

1. I am an independent candidate for the United States House of Representatives in New York's 17th congressional district.

2. I am the plaintiff in the above-captioned matter.

3. I have knowledge of the facts stated herein based on personal knowledge. If called upon to do so, I am able to testify competently to the matters stated herein.

4. On April 19, 2020, more than two months before Governor Cuomo issued Executive Order 202.46, I commenced a lawsuit in the Supreme Court of the State of New York, Westchester County seeking mandamus relief ordering the State to permit me to obtain one thousand electronic signatures on nominating petitions in order to qualify as an independent for the November general election ballot. A true and correct copy of the petition is attached hereto as <u>Exhibit 1</u>.

5. I filed a Proposed Order to Show Cause on April 20, 2020, which was promptly denied by Supreme Court Judge John Hubert the same day in a handwritten order, stating that "the Court has no jurisdiction to act in a legislative capacity and may not change or modify legislative mandates." A true and correct copy of this decision is attached hereto as Exhibit 2.

6. I did not seek relief based on any alleged constitutional violations in the lawsuit I filed in the Supreme Court of the State of New York, Westchester County. Instead, I sought relief based purely on the health and safety risks associated with the COVID-19 pandemic.

7. Given that certain local candidates recently contracted COVID-19 during the petitioning period, it is more likely that voters residing in the 17th congressional district will refuse to open their doors to my petition circulators and me.

8. Members of the public are reluctant to participate in the conversations necessary to facilitate petition signing, let alone actually perform the physical act of signing.

9. My petition circulators and I must participate in a conversation with a potential signer prior to acquiring a signature to determine the person's eligibility to sign in the first place.

10. Independent candidates are at a distinct disadvantage in that we do not have an established network of party supporters and, as such, must rely to a greater extent on contact with strangers.

11. I am personally familiar with the social-distancing restrictions associated with COVID-19, as I have spent time volunteering as a non-contact meal deliverer during the pandemic, delivering thousands of meals to New Yorkers who are unable or afraid to leave their apartments, including elderly individuals in assisted living facilities.

12. Any attempt by my circulators or myself to gather in-person signatures from individuals residing or congregating in such housing facilities, despite our wearing masks, would likely be met with swift opposition and denied entry.

13. Published news stories about "super-spreader" events also make it more likely that voters residing in the 17th congressional district will refuse to open their doors to me and my petition circulators.

14. These are at least some of the reasons that members of the public have been reluctant to participate in the conversations necessary to facilitate petition signing, never mind actually perform the physical act of signing the petition.

15. My solicitation naturally includes contact with far more people than the number of signatures required to be collected for my nominating petition.

16. Moreover, a significant number of signatures are typically invalidated due to illegibility, missing information and other technical defects, therefore forcing me to collect 25-50 percent more signatures than the requirement, to account for those that may be invalidated.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.

Executed: 7/10/2020
Harrison, NY

Respectfully submitted,

[signature]

Joshua E. Eisen