# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X

Application of JOSHUA EISEN,

Petitioner,

For a Judgment Pursuant to CPLR Article 78, Executive Law §28, Executive Orders 202, 202.2, 202.8, 202.13, 202.14, and 202.15, and Election Law Article 6,

-against-

ANDREW M. CUOMO, the GOVERNOR of the STATE OF NEW YORK, AND PETER S. KOSINSKI (CO-CHAIR), DOUGLAS A. KELLNER (CO-CHAIR) AND ANDREW J. SPANO, COMMISSIONERS, CONSTITUTING THE NEW YORK STATE BOARD OF ELECTIONS,

Respondents.
-----------------------------------------------------------------------X

Index no.: __________/2020

Date purchased: April __,2020

**SUMMONS WITH NOTICE**

Petitioner designates Westchester County as the place of trial. The basis of venue is Petitioner's residence, and his place of business located at 50 Main Street White Plains, NY 10606.

To the above-named Respondents:

**You are hereby summoned** to answer the Petition in this action and to serve a copy of your answer, or, if the Complaint/Petition is not served with the Summons, to serve a notice of appearance on the Petitioner's Attorneys within 20 days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Petition.

Dated: April 19, 2020
White Plains, New York

PHILLIPS NIZER LLP

By:____________________
Craig E. Penn, Esq.
Attorneys for Petitioner
485 Lexington Avenue, Floor 14
New York, New York 10017
(212) 977-9700
cpenn@phillipsnizer.com

**NOTICE:** The nature of this action is Judgment pursuant to Article 78 Executive Law §28, Executive Orders 202, 202.2, 202.8, 202.13, 202.14, and 202.15, and Election Law Article 6. The relief sought is an order (i) Directing Respondents to promptly permit Petitioner to obtain one thousand (1,000) electronic signatures on nominating petitions in order to qualify to be on the ballot as an independent candidate for Congress in New York's 17th Congressional District; and (b) For such other and further relief as to this Court seems just and proper.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
----------------------------------------------------------------------X
Application of JOSHUA EISEN, Index no.: ________/2020

Petitioner, **VERIFIED PETITION**

For a Judgment Pursuant to CPLR Article 78, Executive Law §28, Executive Orders 202, 202.2, 202.8, 202.13, 202.14, and 202.15, and Election Law Article 6,

-against-

ANDREW M. CUOMO, the GOVERNOR of the STATE OF NEW YORK, AND PETER S. KOSINSKI (CO-CHAIR), DOUGLAS A. KELLNER (CO-CHAIR) AND ANDREW J. SPANO, COMMISSIONERS, CONSTITUTING THE NEW YORK STATE BOARD OF ELECTIONS,

Respondents.
----------------------------------------------------------------------X

Petitioner, JOSHUA EISEN, by his attorneys, Phillips Nizer LLP, respectfully alleges as follows:

**The Parties**

1. At all times relevant hereto, Petitioner Joshua Eisen ("Petitioner Eisen"), has resided in the town of Harrison, in the County of Westchester, in the State of New York.

2. At all times relevant hereto, Respondent Andrew M. Cuomo ("Governor Cuomo"), has served as Governor of the State of New York.

3. At all times relevant hereto, Respondent PETER S. KOSINSKI ("Co-Chair Kosinski"), has served as a Commissioner and Co-Chair of the New York State Board Of Elections.

4. At all times relevant hereto, Respondent DOUGLAS A. KELLNER ("Co-Chair Kellner"), has served as Commissioner and Co-Chair of the New York State Board Of Elections.

5. At all times relevant hereto, Respondent ANDREW J. SPANO ("Commissioner

Spano"), has served as Commissioner of the New York State Board Of Elections.

6. At all times relevant hereto, Respondent THE NEW YORK STATE BOARD OF ELECTIONS (the "NYS BOE"), has maintained its principal offices at 40 North Pearl Street, Suite 5, in the City of Albany and County of Albany, in the State of New York.

7. Pursuant to Election Law 3-102(1) and Election Law 3-102(17) The NYS BOE is the state governmental entity which has "the power and duty to…issue instructions and promulgate rules and regulations relating to the administration of the election process, election campaign practices and campaign financing practices consistent with the provisions of law… [and to] perform such other acts as may be necessary to carry out the purposes of this chapter."

**New York Election Law**

8. The rules and procedures governing elections in New York State are set forth in Election Law Article 6. "Except as otherwise provided … the designation of a candidate for party nomination at a primary election and the nomination of a candidate for election to a party position to be elected at a primary election shall be by designating petition." NYS Election Law § 6-118.

9. Election Law §6-130 mandates that "sheets of a designating petition … set forth in every instance the name of the signer, his or her residence address, town or city … and the date when the signature is affixed."

10. Under Election Law §6-132, candidates are required to file designating petitions containing a certain minimum number of signatures of registered voters and the signatures are required to have been "**signed in ink**." (Emphasis added.)

11. Election Law §6-138 sets forth rules and procedures for candidates seeking to

have their names placed on the ballot as an independent candidate. It provides in pertinent part that "Independent nominations for public office … be made by a petition containing the signatures of registered voters of the political unit for which a nomination is made who are registered to vote." Election Law §6-138(1). Election Law §6-138(2) provides in pertinent part that "Except as otherwise provided herein, the form of, and the rules for a nominating petition [for candidates seeking an independent nomination] shall conform to the rules and requirements for designating petitions contained in this article [6]."

12. Election Law §6-140(1)(a) provides that:

> "Each sheet of an independent nominating petition shall be **signed in ink** (*emphasis added*), shall contain the following information and shall be in substantially the following form: I, the undersigned, do hereby state that I am a registered voter of the political unit for which a nomination for public office is hereby being made, that my present place of residence is truly stated opposite my signature hereto, and that I do hereby nominate the following named person (or persons) as a candidate (or as candidates) for election to public office (or public offices) to be voted for at the election to be held on the .......... day of .........., 20...., and that I select the name .............. (fill in name) as the name of the independent body making the nomination (or nominations) and .......... (fill in emblem) as the emblem of such body."

13. While nominating petitions to be placed on the ballot for most elections are required to be filed with county boards of elections like the Westchester BOE and the Rockland BOE, nominating petitions to be placed on the ballot for elective offices which include more than one (1) county are required to be filed with the NYS BOE in Albany. New York's 17th Congressional District includes all of Rockland County and portions of central and northwestern Westchester County. Consequently nominating petitions to be placed on the ballot for New York's 17th Congressional District are required to be filed with the NYS BOE rather than with the Rockland BOE, and/or the Westchester BOE. https://www.elections.ny.gov/RunningOffice.html

14. The NYS BOE issued its official 2020 political calendar (the "Political Calendar"), which states that pursuant to Election Law §6-138(4), April 14, 2020 is the first day on which independent nominating petitions can be signed in the State of New York, and that all independent nominating petitions must be filed between May 19, 2020 and May 26, 2020. Election Law §6-158(9). The Westchester BOE posted the Political Calendar on its website. On or about April 9, 2020 the Political Calendar was modified by additional writing highlighted in yellow which states that: "Pursuant to Executive Order 202.13, the circulation and filing of Independent Nominating Petitions has been postponed beginning March 31, 2020 until further notice." https://citizenparticipation.westchestergov.com/images/stories/pdfs/polcalendarrr.pdf) The Rockland BOE posted the identical modified Political Calendar on or about April 9, 2020. http://rocklandgov.com/files/9315/8628/2099/BOE_STATE_PRIMARY_CALENDAR.pdf

15. After the issuance of Executive Order 202.13, the NYS BOE announced that "Executive Orders 202.12 and 202.13 have modified the Election Law by… Beginning March 31, 2020, postponing the circulation and filing of all independent nominating petitions…" https://www.elections.ny.gov/

16. Independent candidates for congress are required to file nominating petitions containing three thousand five hundred (3,500) signatures in order to qualify to be placed on the ballot. Election Law §6-142(2)(e).

17. In the absence of Executive Order 202.13, to be placed on the ballot on election day, independent candidates for congress would have been required to obtain nominating petitions containing 3,500 original signatures of registered voters, a rate of more than 81 signatures per day, between April 14, 2020 and May 26, 2020.

**New York State of Emergency Due to COVID 19**

18. On March 17, 2020, Governor Cuomo exercised his power under Executive Law §28 to declare a "State disaster emergency for the entire State of New York … effective until September 7, 2020… [because of] "the threat that COVID 19 poses to the health and welfare …" of New York's residents. New York Executive Order 202.

19. Executive Order 202 "authorize[d] all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety."

20. On March 14, 2020, Governor Cuomo issued Executive Order 202.2 which temporarily suspended or modified "any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster…" New York Executive Order 202.2.

21. Effective March 17, 2020, Executive Order 202.2 suspended the collection of signatures on designating petitions of candidates seeking the nomination for a major political party, and it reduced by 70% the number of signatures that those candidates were required to obtain.

22. Executive Order 202.2 did not reduce the number of signatures that independent candidates were required to obtain on their designating petitions and it did not change the date that they were required to file them.

23. On March 29, 2020, Governor Cuomo issued Executive Order 202.13 which provides, in pertinent part, that the "Circulation, filing, and collection of any designating petitions, or independent nominating petitions for any office that would otherwise be circulated or filed pursuant to the Election Law, Education Law or any other consolidated law for any office commencing March 31, 2020 are hereby postponed." New York Executive Order 202.13. On or about April 9, 2020, the Political Calendar posted on the Westchester BOE website was modified to reflect the fact that Executive Order 202.13 indefinitely postponed "the circulation and filing of Independent Nominating Petitions … beginning March 31, 2020 until further notice." The modified New York State 2020 Political Calendar postponing circulation, collection and filing of independent nominating petitions on March 29, 2020 was also posted on the website of the Rockland County Board of Elections. http://rocklandgov.com/files/9315/8628/2099/BOE_STATE_PRIMARY_CALENDAR.pdf

24. Governor Cuomo issued Executive Order 202.14 on April 7, 2020 which extended "the suspensions and modifications of law, and-any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order to 202, for thirty days until May 7; 2020…"

25. As of this date, there is no way for independent candidates to get on the ballot in the State of New York.

**Petitioner's Congressional Campaign**

26. In the Spring of 2019, Petitioner Eisen began exploring a run for Congress on the Republican line in New York's 17th Congressional District. After trying unsuccessfully to persuade a number of people who were active in Westchester County politics to seek the Republican nomination for Congress in New York's 17th Congressional District, Petitioner Eisen

decided to seek the nomination himself. He began assembling a team, and on or about October 25, 2019 Eisen For Congress, Inc. completed and filed FEC Form 1 with the FEC.

27. Petitioner Eisen and Eisen for Congress, Inc. rented a campaign office at 50 Main Street, White Plains, New York in November 2019.

28. Between on or about September 2019 and October 2019, Petitioner Eisen hired two (2) full-time campaign staff people, and between September 2019 and January 2020 he hired a small number of part-time campaign staff people

29. On or about February 25, 2020, when the Westchester Republican Party and Rockland Republican Party supported candidates other than Petitioner Eisen, he temporarily suspended active campaigning, but he kept his campaign office open, and continued employing campaign staff.

30. Shortly thereafter, on March 10, 2020, when Petitioner Eisen saw that the congressional campaigns of the candidates supported by the Westchester Republican Party and the Rockland Republican Party were foundering, and that they did not appear to be supporting the issues that were important to Petitioner Eisen, he made the decision to reenter the race and to proceed with collecting nominating petitions to appear on the ballot for the Republican Party.

31. Within days, Petitioner Eisen and his campaign staff learned that they had been exposed to a person who was infected with COVID-19. They heeded the warnings in Executive Order 202 by minimizing contact with other people. One of his staff members tested positive for COVID-19 and another exhibited symptoms but did not receive a test. The illness suffered by two (2) of Petitioner Eisen's staff members, and concerns about contracting and/or spreading the COVID-19 virus derailed Petitioner Eisen's plans and that of his staff to begin collecting nominating petition signatures needed to become the Republican Party nominee. Executive

Order 202.2, which suspended the gathering of signatures on nominating petitions pursuant to Election Law §6-136 to avoid the spread of COVID-19, while a necessary step, made it impossible for Petitioner Eisen and his staff to make up for lost time collecting nominating petition signatures, particularly given their concerns about soliciting original signatures in the midst of a global pandemic.

32. Petitioner Eisen would very much like to get on the ballot as an independent candidate for Congress in New York's 17th Congressional District, but he and his staff are extremely concerned about the risk to their health and to the health of members of the public who may sign Petitioner Eisen's nominating petitions or even speak with the people collecting signatures for his campaign.

33. It is apparent from Executive Order 202 through Executive Order 202.15 that COVID-19 is a very serious health threat. It is likewise clear that Governor Cuomo's Executive Order 202.13 indefinitely "postponing" the "circulation, filing, and collection of any designating petitions, or independent nominating petitions for any office that would otherwise circulated or filed pursuant to the Election Law … or any other consolidated law for any office commencing March 31, 2020" was intended to avoid the spread of COVID-19 through the petitioning process.

34. The risk of spreading COVID-19 is of particular concern for independent candidates like Petitioner Eisen because they independent candidates for Congress in the State of New York are required to submit nominating petitions containing three thousand five hundred (3,500) original signatures of registered voters in order to qualify to be placed on the ballot. Election Law §6-142(2)(e), which is far more than the number required of candidates seeking to get on the ballot for a major political party.

35. New York's requirement that independent candidates seeking to get on the ballot are required to file nominating petitions with a much larger number of original signatures than candidates seeking to obtain the nomination of a major political party was found to be constitutional by the Court in Kuntz v. New York State Senate, 113 F.3d 326 (2nd Cir., 1997). The Court in Kuntz rejected the Plaintiff's "equal protection" challenge to New York's petitioning rules for independent candidates on the grounds that "Candidates who have won their party's primary have already demonstrated a substantial level of support, unlike independent candidates." Id. At 328.

36. The Court's reasoning in Kuntz v. New York State Senate is understandable in normal times, but it is unsupportable in the midst of a global pandemic when social distancing requires people to stay at least 6 feet away from everyone else, and the collection of even a small number of original signatures could have grievous consequences.

37. Using the collection of **original signatures** on nominating petitions as a way for independent candidates to demonstrate that they have a substantial level of support to justify being placed on the ballot is not a reasonable test during a global pandemic. It is hard to imagine that New York's system would survive an "equal protection" challenge during a global pandemic, when collecting even one (1) original signature on a nominating petition can endanger the person providing the signature and the person collecting signatures on nominating petitions. Requiring independent candidates to collect more original signatures than candidates seeking the nomination for major political parties is no long simply a test of substantial support but rather a dangerous impediment for the campaign staff and members of the pubic seeking to have their candidate placed on the ballot as an independent candidate. The signature differential cannot be justified during a pandemic because it can cause serious illness or death. Collecting 3,500

original signatures on nominating petitions in New York's 17th Congressional District would almost certainly cause proliferation of COVID-19.

38. Directing independent candidates like Petitioner Eisen to suspend the collection of signatures on nominating petitions until some time in the future when the risk of COVID-19 infection will be lower is not an equitable solution, particularly in view of the fact that candidates seeking the nomination of a major political party were able to collect their original signatures on nominating petitions in late February and early March when rates of COVID-19 in the State of New York were much lower than they are now, and for much of that time the restrictions of Executive Order 202 and its successive Executive Orders had not yet been put in place. This amounts to a violation of due process for Petitioner Eisen and for his supporters. It also constitutes a denial of equal protection under the law for Petitioner Eisen and his supporters by favoring candidates who are participating in the petitioning process to obtain the nomination for a major political party, which occurs earlier in the election season, and this year occurred when COVID-19 pandemic was less widespread in the State of New York.

## Conclusion

38. To preserve the health and safety of Petitioner Eisen and his campaign staff, as well as the health and safety of registered voters in New York's 17th Congressional District who may be asked to sign Petitions for Petitioner Eisen, it is imperative that petitioning using electronic signatures, E-Mails or faxes rather than original signatures is the only reasonable way for Petitioner Eisen to participate as a candidate in the election process without endangering himself and his supporters.

39. It is essential that Petitioner Eisen, and other independent candidates be promptly granted permission to use electronic signatures on nominating petitions so that they can move

forward with their campaigns. Delaying Petitioner Eisen's right to collect signatures to qualify to be on the ballot until some uncertain date in the future when the COVID-19 pandemic has subsided violates Petitioner Eisen's due process rights and unreasonably discriminates against independent candidates like Petitioner Eisen compared to candidates seeking the nomination of a major political party.

40. If Petitioner Eisen is not permitted to proceed promptly with the collection of nominating petitions using electronic signatures he will suffer irreparable harm. Delaying the collection of original signatures until such time as COVID-19 is no longer a threat to Petitioner Eisen or to members of the public may result in protracted delays which make it virtually impossible for Petitioner Eisen to mount an effective run for Congress. Requiring Petitioner Eisen and other independent candidates to collect original signatures on nominating petitions will cause him and his staff to risk serious illness or death for themselves or others. Petitioner Eisen will suffer irreparable harm if he is force to choose between either of these options.

41. From a review of the array of Executive Orders issued between March 7, 2020 and the present, it is apparent that important and creative ways of adapting existing rules and procedures have been implemented to keep residents of New York as safe as possible while enabling important functions to continue. These rules include video notarization, extending deadlines for paying premiums for health insurance, universal absentee ballots, remote arraignments of criminal defendants, rules concerning pharmacies, rules concerning online education, and rules concerning operations of health-care facilities. The common thread has been to enable businesses and institutions to continue their work without endangering their staff or members of the public. Permitting the collection of nominating petitions using electronic signatures to proceed forward preserves the rights of candidates for public offices while keeping

the public and the candidates safe. Such an adaptation is completely consistent with the rules imposed in the Executive Orders rendered by Governor Cuomo since March 7, 2020. Thus there is a high likelihood of success on the merits in this proceeding.

42. There has been no prior application to any court for the relief sought herein.

WHEREFORE, Petitioner respectfully requests that this Court issue an order:

(a) Directing Respondents to promptly permit Petitioner to obtain one thousand (1,000) electronic signatures on nominating petitions in order to qualify to be on the ballot as an independent candidate for Congress in New York's 17th Congressional District; and

(b) For such other and further relief as to this Court seems just and proper.

Dated: New Castle, New York
April 19, 2020

PHILLIPS NIZER LLP

By:__________________
Craig E. Penn, Esq.
Attorneys for Petitioner
485 Lexington Avenue
Floor 14
New York, New York 10017
(212) 977-9700
cpenn@phillipsnizer.com

**INDIVIDUAL VERIFICATION**

STATE OF NEW YORK )
) ss.:
COUNTY OF WESTCHESTER )

I, JOSHUA EISEN, being duly sworn, depose and say:

1. I am the Petitioner in the within proceeding.

2. I have read the foregoing Petition and I know the contents thereof. Said Petition is true to the best of my knowledge, except as to those matters alleged on information and belief, and as to them I believe them to be true.

JOSHUA EISEN

**Video Notary Pursuant to Executive Order 202.7**
Sworn to before me this 19 day of April, 2020,
in Westchester County, New York,
the Deponent having:

a. Presented a valid photo ID to me during the video conference;
b. Such video conference allowing for direct interaction between the deponent and I;
c. The Deponent having affirmatively represented he is physically situated in the State of New York; and
d. The Deponent having electronically transmitted directly to me a legible copy of the signed Verification on this, the same date it is signed, and me having notarized this transmitted copy.

Notary Public

CRAIG ERIC PENN
Notary Public, State of New York
No. 02PE4856079
Qualified in Westchester County
Expiration 3/10/2022