UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA E. EISEN and GARY E. GREENBERG,

Plaintiffs,

-v.-

ANDREW M. CUOMO, Governor of New York, in his official capacity, PETER S.KOSINSKI, Co-Chair of the New York State Board of Elections, in his official capacity, DOUGLAS A. KELLNER, Co-Chair of the New York State Board of Elections, in his official capacity, and ANDREW J. SPANO, Commissioner of the New York State Board of Elections, in his official capacity,

Defendants.

Case No. 20-cv-05121-PMH-LMS

**DEFENDANTS' REVISED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
28 Liberty Street
New York, New York 10005
(212) 416-8029 (SJF)
Seth.Farber@ag.ny.gov

SETH J. FARBER
Assistant Attorney General
 of Counsel

**ORIGINAL FILED BY ECF**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

The Ballot Access Process ................................................................................................ 3

New York's Response to the COVID-19 Pandemic .......................................................... 5

Plaintiffs' Allegations ....................................................................................................... 8

ARGUMENT .......................................................................................................................... 9

POINT I    STANDARD OF REVIEW .................................................................................. 9

POINT II    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ..... 11

    A.  Plaintiffs Cannot Show a Likelihood of Success on the Merits ....................11

       1. Plaintiffs Cannot Prevail on a First Amendment Claim .......................... 11

       2. Plaintiffs Cannot Prevail on an Equal Protection Claim......................   15

    B.  Plaintiffs Cannot Demonstrate Immediate, Irreparable Harm Because They Have Ample Means of Obtaining The Reduced Number of Signatures Required As The Congressional District, the State Senate District And the State Ease Prior Pandemic Related Restrictions.................................................................... 18

    C. The Balance of the Equities and the Public Interest Strongly Favor the Defendants.......................................................................................................20

CONCLUSION.................................................................................................... 23

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983)......................................................................................................11, 12

*Beal v. Stern*,
    184 F.3d 117 (2d Cir. 1999)...............................................................................................10

*Burdick v. Takushi*,
    504 U.S. 428 (1992).......................................................................................................11, 12

*C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713 (S.D.N.Y. 2016) ......................................................9

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
    356 F.3d 197 (2d Cir. 2004)...............................................................................................16

*City of New York v. Golden Feather Smoke Shop, Inc.*,
    597 F.3d 115 (2d Cir. 2010)..................................................................................................9

*Clements v. Fashing*,
    457 U.S. 957 (1982).............................................................................................................12

*Dzhabrailov v. Decker*,
    2020 WL 2731966 (S.D.N.Y. May 23, 2020) (Halpern, J.) ....................................................9

*eBay, Inc. v. MercExchange*,
    547 U.S. 388 (2006).......................................................................................................20, 21

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)............................................................................................9, 18

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
    841 F.3d 133 (2d Cir. 2016)...............................................................................................11

*Fulani v. McAuliffe*,
    2005 WL 2276881 (S.D.N.Y. Sept. 19, 2005)........................................................................12

*Gagliardi v. Vill. of Pawling*,
    18 F.3d 188 (2d Cir.1994)...................................................................................................16

*Gottlieb v. Lamont*,
    2020 WL 3046205 (D. Conn. June 8, 2020)........................................................................13

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)...............................................................................................9, 18

*Hayden v. Cnty. of Nassau*,
    180 F.3d 42 (2d Cir.1999) ................................................................................. 16

*Hewes v. Abrams*,
    718 F. Supp. 163 (S.D.N.Y.), aff'd 884 F.2d 74 (2d Cir. 1989) ............................ 19

*Jenness v. Fortson*,
    403 U.S. 431 (1971) ......................................................................................... 13

*Kermani v. N.Y. State Bd. of Elections*,
    487 F. Supp. 2d 101 (N.D.N.Y. 2006) ................................................................ 18

*Kuntz v. N.Y. State Senate*,
    113 F.3d 326 (2d Cir. 1997) ....................................................................... 15, 16

*Lerman v. Bd. of Elections in the City of New York*,
    232 F.3d 135 (2d Cir. 2000) .............................................................................. 14

*Libertarian Party of Illinois v. Cadigan*,
    2020 WL 3421662 (7th Cir. Jun. 21, 2020), (*see* Pl. Mem. ) ........................... 12-13

*Lopez-Torres v. New York State Bd. of Elections*,
    462 F.3d 161 (2d Cir. 2000) rev'd on other grounds, 551 U.S. 196 (2008) ............ 14

*Make the Rd. New York v. Cuccinelli*,
    419 F. Supp. 3d 647 (S.D.N.Y. 2019) ................................................................. 20

*Mastrovincenzo v. City of N.Y.*,
    435 F.3d 78 (2d Cir. 2006) ................................................................................ 11

*Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir.
    2010) .............................................................................................................. 9

*Murray v. Cuomo*,
    2020 WL 2521449 (S.D.N.Y. May 20, 2020) ...................................................... 11

*New York State Rifle & Pistol Ass'n v. City of N.Y.*,
    86 F. Supp. 3d 249 (S.D.N.Y. 2015), aff'd sub nom. *New York State Rifle &*
    *Pistol Ass'n, Inc. v. City of N.Y.*, 883 F.3d 45 (2d Cir. 2018) .............................. 21

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................................... 20

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*,
    769 F.3d 105 (2d Cir. 2014) .......................................................................... 9, 20

*People ex. rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015) .............................................................................. 10

iii

*Piccolo v. N.Y. City Campaign Fin. Bd.*,
    No. 05–CV–7040, 2007 WL 2844939 (S.D.N.Y. Sept. 28, 2007) .........................................16

*Plaza Health Labs., Inc. v. Perales*,
    878 F.2d 577 (2d Cir. 1989)..................................................................................................9

*Pope v. Cty. of Albany*,
    687 F.3d 565 (2d Cir. 2012)................................................................................................10

*Prestia v. O'Connor*,
    178 F.3d 86 (2d Cir. 1999)..................................................................................................13

*Price v. New York State Bd. of Elections*,
    540 F.3d 101 (2d Cir. 2008)................................................................................................12

*Purcell v. Gonzalez*,
    529 U.S. 1 (2006)................................................................................................................10

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    140 S. Ct. 1205 (2020)........................................................................................................10

*Reynolds v. Sims*,
    377 U.S. 533 (1964)............................................................................................................20

*Rivera–Powell v. NYC Bd. of Elections*,
    470 F.3d 458 (2d Cir. 2006)................................................................................................16

*Rizzo v. Goode*,
    423 U.S. 362 (1976)............................................................................................................21

*Ruston v. Town Bd. for Town of Skaneateles*,
    610 F.3d 44 (2d Cir. 2010)..................................................................................................16

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)............................................................................................20, 21

*Seifullah v. City of N.Y.*,
    2017 WL 4339478 (E.D.N.Y. Sept. 27, 2017) ...................................................................18

*Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*,
    468 F. App'x 43 (2d Cir. 2012) .........................................................................................18

*Thomas v. New York City Bd. Of Elections*,
    898 F. Supp. 2d 594 (S.D.N.Y. 2012)................................................................................21

*Thompson v. DeWine*,
    959 F.3d 804 (6th Cir. 2020) .............................................................................................12

iv

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) .......................................................................................12

*Tiraco v. New York State Bd. of Elections*,
    963 F.Supp.2d 184 (E.D.N.Y. 2013) ............................................................15

*Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) .............................................................................10

*Veasey v. Perry*,
    135 S. Ct. 9 (2014) ........................................................................................10

*Weinberger v. Romero–Barcelo*,
    456 U.S. 305 (1982) ......................................................................................21

*Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810
    (S.D.N.Y. 2016) ...............................................................................................9

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .......................................................................................9, 20

## CONSTITUTIONS

First Amendment…………………………………………………………………passim
Fourteenth Amendment ....................................................................................12
        Equal Protection Clause……………………………………………………..16

## STATE STATUTES

Election Law
Article 6

§ 6-142……………………………………………………………          3, 17
§ 6-154(2)..........................................................................................................4
§ 6-154(3)..........................................................................................................4
§ 6-158 .............................................................................................................4

Article 16
§ 16-102(2)……………………………………………………………………..5

## STATE REGULATIONS

N.Y. Exec. Order 202 (Mar. 7, 2020) ...............................................................6

N.Y. Exec. Order 202.2 (Mar. 14, 2020) ..........................................................6

N.Y. Exec. Order 202.6 (Mar. 18, 2020) ..........................................................6

N.Y. Exec. Order 202.46 (Jun. 30, 2020) ........................................................... passim

**RULES**

N.Y. C.P.L.R.
§§ 5701, *et seq.* .......................................................................................5

**MISCELLANEOUS AUTHORITIES**

Failla, Zak, "COVID-19: Westchester, Hudson Valley Cleared to Enter Phase
Four, Here's What it Means," ...............................................................8, 18

*"Global coronavirus deaths top half a million,"* available at
https://www.reuters.com/article/us-health-coronavirus-deaths/global-
coronavirus-deaths-top-half-a-million-idUSKBN23Z0UQ (June 28, 2020)............................6

*"Governor Cuomo Announces New York City Enterfourts Phase III of Reopening*
*Without Indoor Dining and Subject to State Guidance Today"* (Jul. 6, 2020),
https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-
city-enters-phase-iii-reopening-without-indoor-dining-and ...................................8

https://forward.ny.gov/phase-four-industries ....................................................8

https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-
cuomo-announces-three-regions-new-york-state-ready ..........................................7

https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-
cuomo-outlines-additional-guidelines-when-regions-can........................................7

https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-
cuomo-outlines-phased-plan-re-open-new-york-starting ........................................7

https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/NYForward
ReopeningGuide.pdf ........................................................................ 7-8

*New York City Region Is Now an Epicenter of the Coronavirus Pandemic* (March
22, 2020), https://www.nytimes.com/2020/03/22/nyregion/Coronavirus-new-
York-epicenter.html ........................................................................17

*Pleasant Daily Voice* (Jul. 6, 2020), https://dailyvoice.com/new-york/mount
pleasant/news/covid-19-westchester-hudson-valley-cleared-to-start-phase-4-
heres-what-it-means/790384/...............................................................8

Defendants ANDREW M. CUOMO, Governor of New York, in his official capacity ("Governor"); PETER S.KOSINSKI, Co-Chair of the New York State Board of Elections, in his official capacity; DOUGLAS A. KELLNER, Co-Chair of the New York State Board of Elections, in his official capacity; and ANDREW J. SPANO, Commissioner of the New York State Board of Elections, in his official capacity (collectively, "Defendants") respectfully submit this revised memorandum of law, together with the accompanying Declaration of Todd D. Valentine dated July 23, 2020 ("Valentine Decl."), in opposition to Plaintiffs'[1] motion for a temporary restraining order and/or preliminary injunction (ECF Nos. 18-21).

## PRELIMINARY STATEMENT

Plaintiffs Joshua Eisen and Gary Greenberg seek to be on the November 2020 General Election ballot, respectively, as independent candidate for Congress in New York's 17th Congressional District ("Congressional District") and as an independent candidate for State Senate in New York's 46th State Senate District ("State Senate District"). To do so, they, like all other independent candidates, must demonstrate a modicum of community support by obtaining signatures on a nominating petition from registered voters within the District. Due to the COVID-19 pandemic, the period for the collection and submission of such signatures was delayed while New York State was at the peak of its infections and death. Now, thankfully, New York has been able to carefully reopen, and the entirety of the Congressional District has been in Phase Four for over two weeks, as has the State Senate District.

Petition signatures can now be obtained safely, subject to compliance with public health

---

[1] Plaintiffs Joshua Eisen and Gary Greenberg filed an Amended Complaint on July 20, 2020, at approximately 5:35 p.m., (ECF No. 28). Plaintiffs filed a letter application seeking to modify the briefing schedule in order to permit Plaintiffs to, *inter alia,* file a declaration from Mr. Greenberg (ECF No. 29), and today, July 21, 2020, Plaintiffs have filed Mr. Greenberg's Declaration. (ECF No. 30-1). Defendants address his allegations as set forth in the Amended Complaint in an abundance of caution, although they reserve all rights to object to his participation in the present application given the potentially prejudicial timing.

and social distancing guidelines. However, to allow sufficient time before the General Election for administrative and judicial challenges and the finalization of ballots, the period for the collection of independent candidate signatures was shortened. To account for this shorter period, the number of required signatures was also reduced to 70% of those ordinarily required.

By this lawsuit, Plaintiffs attempt to excuse themselves from these ballot access requirements and seeks several forms of extraordinary, emergency relief. Specifically, Plaintiffs seeks an order and judgment requiring Defendants to significantly alter the legal requirements for obtaining signatures on petitions to appear on the ballot as independent candidates for the United States House of Representatives and the New York State Senate, by mandating a significant reduction in the number of voters' signatures' required (a requirement that has already been reduced by 30% pursuant to an EO Order issued by the Governor); permitting such signatures to be obtained electronically; or dispensing with the petition signature requirement in its entirety.

To the extent Plaintiffs have not been able to obtain sufficient signatures, they cannot establish entitlement to such drastic remedies for a problem of their own making. The State of New York is entitled to impose reasonable measures to determine whether a candidate has real support among members of the voting public before placing them on the ballot. In recognition of difficulties associated with the ongoing COVID-19 pandemic, by the Governor's Executive Order ("EO") 202.46, the requirement for ballot signatures for independent candidates in a Congressional election was reduced from 3,500 voters in the Congressional District to 2,450 voters in the district, and in a State Senate election from 3,000 to 2,100 voters in the district.

Contrary to Plaintiffs' contention, New York's signature requirement, which has already been relaxed to the extent of the EO, remains a rational means of ensuring that there is support

for a candidate within their district and ensuring an orderly election process to avoid ballot chaos. The COVID-19 pandemic in New York is improving, and numerous previous restrictions are being eased as part of New York's phased reopening plan. Indeed, the entire Congressional District at issue is now in "Phase Four," as is the State Senate District. Here, the EO has reasonably balanced the interests of maintaining public safety with ensuring an orderly election, where independent candidates have shown sufficient public support to appear on the ballot. As such, Plaintiffs cannot show a likelihood of success on the merits (*see* Point II-A, *infra*), that they will suffer irreparable harm (*see* Point II-B, *infra*), that a balancing of hardship tips in their favor (*see* Point II-C, *infra*), or that the public interest is served by the injunctive relief they seek (*see* Point II-D, *infra*).

Accordingly, Plaintiffs' present motion for a temporary restraining order and/or preliminary injunction should be denied.

## STATEMENT OF FACTS

### The Ballot Access Process

To appear on the general election ballot, a prospective candidate must file an independent nominating petition, containing a specified number of valid signatures provided by members of the electorate. The required number of signatures varies for different offices, as set forth in New York Election Law § 6-142. For offices to be voted on by the entirety of a particular political unit (e.g., a congressional district), the usual requirement is 5% of the number of votes cast for governor in the last gubernatorial election in that political unit or no more than 3,500 signatures for a Congressional election and 3,000 for a State Senate election.  *See* N.Y. Elec. Law § 6-142; *see also* Valentine Decl. at ¶¶ 3, 4. The total number of active voters in the Congressional District as of February 2020 was 456,834, and the total number of active voters in the State

Senate District as of February 2020 was 190,347, so that the number of signatures required to be gathered represents, respectively, 0.536% and 1.1% of active voters in those districts. Valentine Decl. at ¶¶ 6, 7.

The timing for the filing of designating petitions with county-level boards of elections is ordinarily governed by Election Law § 6-158, which provides for submissions between 23 and 24 weeks prior to the general election. For New York's General Election on November 3, 2020, these provisions would have required independent nominating petitions to be filed between May 19 and May 26, 2020, and signatures to have been gathered in the approximately six-week period before the filing deadline, i.e. during April and May 2020. In light of the public health situation in New York during those months, this period has been modified pursuant to EO 202.46, so that petitions must now be filed between July 27 and July 30, 2020, roughly two months later.

Following the filing of an independent nominating petition, any voter eligible to vote for the position in question may file objections to the petition. N.Y. Elec. Law § 6-154(2). Such objections must be filed with the relevant board of elections within three days after the filing of the designating petition. *Id.* The board of elections will evaluate the objections, hold hearings on the petition, and then "give notice of the determination forthwith by mail to each candidate named in the petition or certificate, and, if the determination is made upon specified objections, the objector shall be notified." N.Y. Elec. Law § 6-154(3); *see also* Valentine Decl. at ¶ 16. ("[f]unctionally, with the independent petitioning period ending on July 30, 2020, there is a little over five weeks for the objection and litigation process to unfold before the September 9, 2020 ballot certification deadline.")

As part of the extensive process afforded under New York law, judicial review of such determinations by the New York State Supreme Court is governed by Article 16 of the Election

Law. Proceedings challenging county or city board determinations as to the validity of designating petitions must be instituted within the latter of fourteen days after the last day to file the petition, or within three business days after the county or city board makes a determination that the petition is invalid. N.Y. Elec. Law § 16-102(2). Orders and judgments of the New York State Supreme Court in proceedings brought pursuant to Article 16 of the Election Law may be appealed to the Supreme Court, Appellate Division, and ultimately to the Court of Appeals. *See* N.Y. C.P.L.R. §§ 5701, *et seq.*

**New York's Response to the COVID-19 Pandemic**

As the Court is aware, the United States, and New York State in particular, has been at the epicenter of the global COVID-19 pandemic, a public health emergency of historic proportions.[2] As a result of the COVID-19 pandemic, the Governor has issued a series of EOs intended to maintain the public health and still permit both essential business activity and official business to proceed during this unprecedented public health crisis, commencing with EO 202, on March 7, 2020, declaring a disaster emergency in the State of New York. *See* N.Y. Exec. Order 202 (Mar. 7, 2020), https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york. On or about March 14, 2020, Governor Cuomo issued EO 202.2, which modified signature gathering for political party primary candidates with a 70% reduction and also suspended signature gathering by March 17, 2020—*just three days after that EO. See* N.Y. Exec. Order 202.2 (Mar. 14, 2020), https://www.governor.ny.gov/news/no-2022-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

In EO 202.6, dated March 18, 2020, the Governor set forth a list of essential businesses

---

[2] *See, e.g., "Global coronavirus deaths top half a million,"* available at https://www.reuters.com/article/us-health-coronavirus-deaths/global-coronavirus-deaths-top-half-a-million-idUSKBN23Z0UQ (June 28, 2020).

and activities that would be permitted to operate during the pandemic emergency. *See* N.Y. Exec. Order 202.6 (Mar. 18, 2020), https://www.governor.ny.gov/news/no-2026-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency. Most other businesses and activities were substantially or entirely curtailed as a result of that and other executive orders. *See* Guidance on EO 202.6, https://esd.ny.gov/guidance-executive-order-2026 (providing guidance on essential business activity during the pandemic emergency) (last updated Jun. 29, 2020).

As a result of the heroic performance of healthcare workers, essential workers, and first responders and the cooperation of the public, conditions of the COVID-19 pandemic improved to the point where Governor Cuomo was able to propose a phased reopening plan of New York, beyond the essential businesses and activities that were permitted pursuant to EO 202.6. On or about April 26, 2020, Governor Cuomo announced a phased approach to reopening New York's business, industry, and other activities based upon a data-driven regional analysis. *See* "Amid Ongoing Covid-19 Pandemic, Governor Cuomo Outlines Phased Plan to Re-Open New York Starting with Construction and Manufacturing," https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-cuomo-outlines-phased-plan-re-open-new-york-starting.

On or about May 4, 2020, Governor Cuomo announced that the regional reopening analysis would consider several health factors, including new COVID-19 infections, as well as health care system, diagnostic testing, and contact tracing capacity. *See* "Amid Ongoing COVID-19 Pandemic, Governor Cuomo Outlines Additional Guidelines for When Regions Can Reopen," https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-cuomo-outlines-additional-guidelines-when-regions-can.

On or about May 11, 2020, Governor Cuomo announced the first phase of reopening

would begin on May 15, 2020, in several regions of New York, based upon available regional

metrics and indicators. *See* "Amid Ongoing COVID-19 Pandemic, Governor Cuomo Announces

Three Regions of New York State Ready to Begin Reopening on May 15, 2020,"

https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-cuomo-

announces-three-regions-new-york-state-ready. On that same date, Governor Cuomo released

"New York Forward," which set forth detailed criteria concerning the regional and a phased

reopening (in four phases, during which business and other activity would be progressively less

restricted). *See "*NY Forward: A Guide to Reopening New York & Building Back Better,"

https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/NYForward

ReopeningGuide.pdf.

 The Mid-Hudson Valley region, in which the entire 17th Congressional District lies,

entered the final and least restrictive phase, Phase Four, on or about July 7, 2020. *See* Failla, Zak,

"COVID-19: Westchester, Hudson Valley Cleared to Enter Phase Four, Here's What it Means,"

*Mt. Pleasant Daily Voice* (Jul. 6, 2020), https://dailyvoice.com/new-york/mount

pleasant/news/covid-19-westchester-hudson-valley-cleared-to-start-phase-4-heres-what-it-

means/790384/); *see also* "Governor Cuomo Announces New York City Enters Phase III of

Reopening Without Indoor Dining and Subject to State Guidance Today" (Jul. 6, 2020),

https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-enters-phase-iii-

reopening-without-indoor-dining-and ("Announces Mid-Hudson Region to Enter Phase IV

Tomorrow").[3] Similarly, the 46th State Senate District, located in the Capital Region, is also in

---

[3] Phase Four provides for the opening of the following activities and businesses in addition to essential services and those businesses and activities already opened pursuant to Phases One through Three, and specifically includes Higher Education, Pre-K to Grade 12 Schools, Low-Risk Outdoor Arts & Entertainment, Low-Risk Indoor Arts & Entertainment, Media Production, Professional Sports Competitions with No Fans and Malls. *See* New York Forward, "Phase Four Industries," https://forward.ny.gov/phase-four-industries.

"Phase Four." *See id.; see also* Valentine Decl. at ¶ 8 (The "46th State Senate District and the 17th Congressional District together span three New York regions…—Mid-Hudson, Capital District and Mohawk Valley. … Mohawk Valley entered phase 4 on June 26, 2020[,] … Capital District entered into phase 4 on July 1, 2020[,] … [and] Mid-Hudson Region was in phase 3 between June 30 and July 6, and entered into phase 4 on July 7, 2020.").        .

**<u>Plaintiffs' Allegations</u>**

Plaintiffs Eisen and Greenberg are, respectively, an independent candidate for the House of Representatives in the 17th Congressional District, which includes parts of Westchester County and the entirety of Rockland County, and an independent candidate for the State Senate's 46th District, in New York's Capital Region. (*See* Amended Complaint, ECF No. 28 ("Compl.") at ¶¶ 3, 4.) For their part, Plaintiffs contend that New York's designating petition requirements, pursuant to provisions of the Election Law as modified by EO 202.46, violates their First Amendment and Equal Protection rights to appear on the General Election ballot as candidates. Specifically, Plaintiffs contend that these rights can only be vindicated if either: (1) the "wet signature" requirement is reduced by 70% so that only 1,050 signatures are required for the Congressional race (*see* Compl., "Wherefore Clause," ¶ b.5); (2) they are permitted to use some form of electronic signature gathering *(see* Memorandum of Law in Support of Plaintiff Joshua E. Eisen's Application for Preliminary Injunction ("Pl. Mem."), ECF No. 21, at p. 17; Compl., "Wherefore Clause," ¶¶ b.3, b.4); or (3) the petition signature requirement be dispensed with altogether (*see* Pl. Mem. at p. 17; Compl., Wherefore Clause at ¶¶ b.1, b.2).

## ARGUMENT

## POINT I

## STANDARD OF REVIEW

In the recent decision in *Dzhabrailov v. Decker,* 2020 WL 2731966 at * 3 (S.D.N.Y. May 23, 2020) (Halpern, *J.*), this Court set forth the appropriate standard of review for a preliminary injunction motion:

> A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713, 716 (S.D.N.Y. 2016) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). To obtain a preliminary injunction, a petitioner must demonstrate: "1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the [petitioner's] favor; and 3) that the public's interest weighs in favor of granting an injunction." *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 811–12 (S.D.N.Y. 2016) (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)).
>
> A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *C.D.S.*, 217 F. Supp. 3d at 716 (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)). "To satisfy the irreparable harm requirement, [petitioner] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* at 716–17 (citing *Grand River*, 481 F.3d at 66)."

*See also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120 (2d Cir. 2010). And where, as here, a case involves "governmental action taken in the public interest pursuant to a statutory or regulatory scheme," a plaintiff cannot rely on the "fair-ground-for-litigation" alternative. *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989) (internal citations omitted)). "A preliminary injunction is an extraordinary remedy never awarded as of right," and courts "should

pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (internal quotations omitted).

When the requested relief is in the form of a mandatory injunction—i.e., "to alter the status quo by commanding some positive act"—the standard is even higher: "[A] mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *see also Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) (explaining that for a mandatory injunction, "the moving party must show a clear or substantial likelihood of success") (internal quotations omitted); *People ex. rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("a heightened standard" is applied where, as here, "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits'") (internal quotations omitted).

Additionally, the U.S. Supreme Court has repeatedly cautioned that "courts must take careful account of considerations specific to election cases." *Veasey v. Perry*, 135 S. Ct. 9, 10 (2014). "Court orders affecting elections [can] result in voter confusion" and that, "[a]s an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 529 U.S. 1, 4-5 (2006); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).

In sum, where, as here, a movant seeks a mandatory injunction against government action taken in the public interest pursuant to a valid statutory scheme, he must meet a heightened standard and demonstrate *all* of the following factors: (1) a clear or substantial likelihood of success on the merits, (2) irreparable harm absent the granting of injunctive relief, and (3) that the public interest weighs in favor of granting the injunction. *See Pope v. Cty. of Albany*, 687

F.3d 565, 570 (2d Cir. 2012); *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016). As demonstrated herein, Plaintiffs cannot satisfy their heavy burden with respect to *any* of the essential criteria for a preliminary injunction, and, therefore, the Court should deny Plaintiffs' motion for preliminary injunction.

**POINT II**

**PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION**

**A.    Plaintiffs Cannot Show a Likelihood of Success on the Merits**

Plaintiffs cannot establish a likelihood of success on the merits of their claims because, in light of the current circumstances, EO 202.46's reasonable and generally applicable modifications to New York's existing election laws are plainly constitutional. Plaintiffs' motion for a preliminary injunction that would alter the *status quo* should, accordingly, be denied because they cannot demonstrate "a clear or substantial likelihood of success on the merits." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006) (internal quotations omitted).

**1.    Plaintiffs Cannot Prevail on Their Putative First Amendment Claim**

While the U.S. Constitution affords qualified protections to the right to run for political office, it is well established that states have broad authority to manage elections, including, specifically, the right to promulgate laws that reasonably regulate the ability to appear on the ballot. As the U.S. Supreme Court has made clear, "a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). When considering a state election law's constitutionality, courts must apply a balancing test derived from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). *Murray v. Cuomo*, 2020 WL 2521449, at *10 (S.D.N.Y. May 20, 2020). Under this

test, the court must weigh the "'character and magnitude of the asserted injury to the rights
protected by the First and Fourteenth Amendments . . .' against 'the precise interests put forward
by the State as justifications for the burden imposed by its rule.'" *Burdick*, 504 U.S. at 434
(quoting *Anderson*, 460 U.S. at 789). In applying this "sliding scale" test, the severity of the
restrictions imposed determines the level of judicial review. "Regulations imposing severe
burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.
Lesser burdens, however, trigger less exacting review, and a State's important regulatory
interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons
v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) (internal quotations omitted); *see also
Price v. New York State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (the State's
reasonable and nondiscriminatory restrictions will generally be sufficient to uphold the statute if
they serve important state interests, and judicial review in such circumstances will be quite
deferential). Notably, "[c]andidacy is not a fundamental right in our political system, and not all
restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally
suspect burdens on voters' rights to associate or to choose among candidates." *Fulani v.
McAuliffe*, 2005 WL 2276881, at *3 (S.D.N.Y. Sept. 19, 2005), citing *Anderson*, 460 U.S. at 788,
and *Clements v. Fashing*, 457 U.S. 957, 963 (1982). *See also Thompson v. DeWine*, 959 F.3d
804, 810 (6th Cir. 2020) (holding Ohio likely to prevail on its claim that maintaining its election
regulations during COVID-19 pandemic did not violate First Amendment rights of candidates
petitioning to obtain place on ballot via a state requirement to obtain signatures in ink, and
finding "just because procuring signatures is now harder (largely because of a disease beyond the
control of the State) doesn't mean that Plaintiffs are *excluded* from the ballot.")

Plaintiffs' reliance on the Seventh Circuit case of *Libertarian Party of Illinois v.*

*Cadigan*, 2020 WL 3421662 (7th Cir. Jun. 21, 2020), (*see* Pl. Mem. at 7), is misplaced as that case is readily distinguishable. There, the State of Illinois had previously agreed to the terms of a stay, but nonetheless brought a challenge claiming irreparable harm nearly three weeks later, and unlike the present case, the entire period of signature gathering took place during the State's "stay at home" order, and unlike here, the State did not grant any reduction or adjustment in the signature requirement. *Id.*

Here, Plaintiffs contend: (1) that the requirement that they obtain petition signatures, even at the reduced numbers of 2,450 for the Congressional election and 2,100 for the State Senate election, is so onerous a burden as to impair their constitutional right to association to advance their political views by seeking a place on the ballot as an independent candidate; (2) that the State lacks an interest *at all* in maintaining a signature requirement during the pandemic; and (3) that less restrictive means exist. (*See* Pl. Mem. at pp. 11-19.) However, the limited magnitude of the burden on Plaintiffs caused by EO 202.46 is simply not sufficiently burdensome to trigger any but the most deferential scrutiny. *See e.g.* Valentine Decl. at ¶¶ 10-12 (describing viable means of signature gathering). Furthermore, the State has a strong countervailing interest in assuring that there is public support for their candidacies. *See Jenness v. Fortson*, 403 U.S. 431, 442 (1971); *Prestia v. O'Connor*, 178 F.3d 86, 88–89 (2d Cir. 1999) (upholding the constitutionality of a 5% signature ballot access requirement as a reasonable requirement that furthered the important state interest in assuring that a candidate has a significant modicum of support); *Gottlieb v. Lamont,* 2020 WL 3046205, at * 9 (D. Conn. June 8, 2020) (the "state has an important interest in ensuring that candidates on the ballot have a 'significant' modicum of support…. [and] state's signature requirement, reduced by Executive Order from 5% 5o 3.5%, undoubtedly serves this important state interest."). Against this background, EO 202.46,

13

which further *reduced* the signatures required by 30%, is clearly not discriminatory.

Thankfully, New York is on its way to recovering from the COVID-19 pandemic, and large portions of the State, including the entirety of the Congressional District and the State Senate District are currently in "Phase Four," permitting most businesses and houses of worship to open subject to appropriate social distancing guidelines, mask wearing, and the like. *See e.g.* Governor's Press Release dated July 6, 2020, *supra.* While the signature collection period to appear on the ballot as an independent Congressional candidate was truncated from 41 days to 30 days to accommodate the overall election calendar, as relevant here, the signature requirement was reduced by 30 percent—from 3,500 to 2,450 signatures and from 3,000 to 2,100 for the Congressional and State Senate races, respectively. *See* EO 202.46. Thus, given these modifications and in light of the current public health conditions in the Congressional District and the State Senate District, Plaintiffs essentially face the same burden that an individual would ordinarily have in attempting to run as an independent candidate. As such, Plaintiffs' conclusory assertions of the virtual impossibility of compliance with non-discriminatory and generally applicable ballot access requirements (*see* Pl. Mem. at p. 12), ring hollow and provide no basis for the Court to exempt them from such requirements.

In *Lopez-Torres v. New York State Bd. of Elections*, 462 F.3d 161, 183-4 (2d Cir. 2000) *rev'd on other grounds*, 551 U.S. 196 (2008), the Second Circuit recognized that, in analyzing the First Amendment rights implicated in ballot access cases, the court must ascertain the nature of the alleged injury "within the context of the state's overall scheme of election regulations." *Id.* (quoting *Lerman v. Bd. of Elections in the City of New York,* 232 F.3d 135, 145 (2d Cir. 2000). The *Lopez-Torres* court further held:

> as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany

the democratic processes." *Id.* [Andersen, 460 U.S.] at 788, 103 S.Ct. 1564 (internal quotation marks omitted). Accordingly, in resolving a challenge that pits a State's power to regulate its elections against the rights secured by the First Amendment, we cannot resort to any "litmus-paper test that will separate valid from invalid restrictions." *Id.* at 789, 103 S.Ct. 1564 (internal quotation marks omitted).

462 F.3d 184.

Simply put, Plaintiffs' arguments that, compared to their own personal interests in obtaining a place on the ballot, the State has little or no countervailing interest in overseeing and regulating its elections in the present context (*see* Compl. ¶ 39; Pl. Mem. at pp. 14-16), are unavailing and of no moment. The Court must consider the overview of New York's interests in ensuring a fair election here through the generally applicable methods provided by statute and pursuant to the EO. Thus, under all of the present circumstances, Plaintiffs cannot establish a First Amendment violation.

### 2.      Plaintiffs Cannot Prevail on Their Putative Equal Protection Claim

Under well-established Second Circuit authority, the differential treatment under New York law between the ballot signature requirements for independent candidates and for candidates running in political parties is not an equal protection violation. *Kuntz v. N.Y. State Senate*, 113 F.3d 326, 328 (2d Cir. 1997) (finding that party candidates who had won primary had already show a measure of public support and that the requirement of 3,500 signatures was not so onerous as to freeze the status quo).

The decision in *Tiraco v. New York State Bd. of Elections*, 963 F.Supp.2d 184, 199 (E.D.N.Y. 2013), establishes the elements of a valid Equal Protection claim in the election context:

> [T]to state an equal protection claim, Plaintiff must allege that the City Board intentionally discriminated against him, "either by adopting out of [discriminatory] animus policies which are facially neutral but have a ... discriminatory effect, or by

applying a facially neutral policy in a ... discriminatory manner." *Rivera–Powell,* 470 F.3d at 470 (citing *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 48 (2d Cir.1999)); *Piccolo v. N.Y. City Campaign Fin. Bd.,* No. 05–CV–7040, 2007 WL 2844939, at *11 (S.D.N.Y. Sept. 28, 2007) (quoting *Hayden,* 180 F.3d at 48). "To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 193 (2d Cir.1994).

In the present case, Plaintiffs contend that the reduction in signature requirements for independent candidates in the *general election* by 30%—from 3,500 to 2,450 for the Congressional election and from 3,000 to 2,100 in the State Senate election—violates the Equal Protection Clause because candidates who are members of parties who sought to be on the ballot for the June 23, 2020 *primary election* (1) had their signature requirement lowered by 70% and (2) had an 11-day period in which to gather signatures "without restrictions" and had more lead time for the signature-gathering process than was the case with EO 202.46. (*See* Pl. Mem. at pp. 20-23.) However, Plaintiffs' contentions of a violation of the Equal Protection Clause fail because the EO itself is not discriminatory—indeed, it treats all independent candidates identically, and, per *Kuntz*, treating independent and party member candidates differently is not an equal protection violation—and because Plaintiffs do not rely on an appropriate "similarly situated" comparison with respect to others he believes are being treated more favorably. *See, e.g., Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 44, 49-60 (2d Cir. 2010) (affirming dismissal of a "class of one" claim based on plaintiffs' failure to adequately allege that comparators who were "sufficiently similar" to plaintiffs were treated more favorably); *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated.").

While the party primary signature requirements of the earlier EO 202.2, dated March 14,

16

2020, did reduce signature requirements by 70% (rather than 30% as here), it did so only for purposes of the State's June 23, 2020 primary elections. In that regard, it must be noted that an independent candidate may obtain signatures from *any* registered voter in the district and not just members of the political party whose nomination is sought. *See* N.Y. Elec. Law § 6-142. And, of course, an independent candidate does not have to run in a primary election *and win* in order to appear on the November General Election ballot. More significantly, at the time of the earlier EO in March 2020, the State was going into the height of the pandemic, and restrictions on public activity in the interest of minimizing social contact to limit the spread of the virus were at their maximum. Indeed, EO 202.2 terminated signature collections *altogether* just three (3) days later, by March 17, 2020.[4]

Presently, and through the entirety of July 2020, the Mid-Hudson Valley and Capital regions that include the Congressional District and State Senate District have met the public health criteria to warrant "Phase Four" reopening of businesses and activities, *see* "Governor Cuomo Announces New York City Enters Phase III of Reopening Without Indoor Dining and Subject to State Guidance Today" (July 6, 2020), *supra,* an entirely different scenario from what took place in March of this year. While Plaintiffs make much of an eleven (11) day period prior to any pandemic related restriction (*see* Compl. ¶39; Pl. Mem. at pp. 21, 23), actual conditions in the State were such that most businesses and public gatherings were shut down shortly after EO 202.2 (which modified the signature threshold on primary election ballot petitions for candidates from political parties) was issued on March 14, 2020. By contrast, Plaintiffs are encountering regions moving in the opposite direction as, indeed, most businesses and houses of worship in

---

[4] *See* The New York Times, *New York City Region Is Now an Epicenter of the Coronavirus Pandemic* (March 22, 2020), https://www.nytimes.com/2020/03/22/nyregion/Coronavirus-new-York-epicenter.html.

the Congressional District and the State Senate District are now open. *See, e.g.,* Failla, Zak, "COVID-19: Westchester, Hudson Valley Cleared to Enter Phase Four," *supra.*

Similarly, Plaintiffs' contentions regarding non-partisan school board elections, (*see* Compl. ¶ 34; Pl. Mem. at p. 3), are also of no moment insofar as those elections involve much smaller electorates and ballots that do not involve political parties; thus, presenting different state interests concerning ballot chaos and voter confusion.

Because Plaintiffs cannot offer truly similarly situated "apples to apples" comparators, their putative Equal Protection claim fails, and he cannot show likelihood of success on the merits.

### B. Plaintiffs Cannot Demonstrate Immediate, Irreparable Harm Because They Have Ample Means of Obtaining The Reduced Number of Signatures Required As The Congressional District, the State Senate District And the State Ease Prior Pandemic-Related Restrictions

In the present case, Plaintiffs have not shown entitlement to the extraordinary relief of a mandatory injunction against the State because Plaintiffs' speculation as to imminent, irreparable harm fails to carry their heavy burden. *See Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012) (imminent harm is "the single most important prerequisite for the issuance of a preliminary injunction"). To satisfy the irreparable harm requirement, a plaintiff "must demonstrate that absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent . . . ." *Seifullah v. City of N.Y.*, 2017 WL 4339478, at *1 (E.D.N.Y. Sept. 27, 2017), quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) and citing *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Although under certain circumstances, an assertion of the loss of First Amendment freedoms may permit a court to presume irreparable harm, *see Kermani v. N.Y. State Bd. of Elections,* 487 F. Supp. 2d 101 (N.D.N.Y. 2006) (injunction

granted against enforcement of Election Law section restricting outside expenditures in primary elections), such factors are not present here.

Instead, Plaintiffs' attempt to show imminent harm via their contention that it is virtually *impossible* to meet the reduced signature requirement in the current environment as a result of the COVID-19 pandemic. But, they notably fail to state what efforts they have engaged in to attempt to collect signatures, how many signatures they have actually obtained to date, or whether other independent candidates have met the signature requirement. *See* Compl. *passim*. In contrast to Plaintiffs' conclusion of impossibility, In fact, while the pandemic still remains a vital public health concern, the conditions in Plaintiffs' districts have changed dramatically in the last four months, and the State has formulated and implemented a reopening plan. Specifically, as previously noted, the Mid-Hudson Valley and Capital regions, in which the entire relevant Congressional District and State Senate District respectively lie, are now in Phase Four, meaning that most businesses and houses of worship are permitted to open under social distancing measures, masking requirements, and other public health precautions. Accordingly, under the current circumstances, Plaintiffs have not demonstrated immediate, irreparable harm.

Moreover, Plaintiffs cannot meet the harm requirement by arguing that collecting signatures for independent nomination petitions is difficult. Acquiring 3,500 signatures on ballot petitions in any Congressional District, or 3,000 signatures in a State Senate District, presents challenges to candidates in any event but is a valid exercise of New York State's authority to supervise access to the ballot. *See Hewes v. Abrams*, 718 F. Supp. 163, 166 (S.D.N.Y.), *aff'd* 884 F.2d 74 (2d Cir. 1989) (New York law rationally created a signature requirement to balance against worries of ballot confusion due to inclusion of candidates without even a minimum level of support). In the present case, that requirement has been reduced to 2,450 signatures and 2,100

signatures, respectively. These relaxed requirements undercut any claim of hardship by Plaintiffs.

Thus, Plaintiffs cannot show an immediate, irreparable harm absent the issuance of an injunction, and his motion should be denied on this basis.

## C.   The Balance of the Equities and the Public Interest Strongly Favor the Defendants

Finally, the balance of the equities and the consideration of the public interest in this case decidedly weigh in favor of denying Plaintiffs' request for emergency relief. "As the Supreme Court reaffirmed in *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008), a plaintiff seeking a preliminary injunction must demonstrate not just that they have some likelihood of success on the merits and will suffer irreparable harm absent an injunction, but also that the 'balance of the equities tips in his favor and an injunction is in the public interest.'" *Otoe-Missouria Tribe*, 769 F.3d at 112 n.4. "These factors merge when the Government is the opposing party." *Make the Rd. New York v. Cuccinelli*, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019), citing *Nken v. Holder*, 556 U.S. 418, 435 (2009). "In assessing these factors, the court must 'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,' as well as 'the public consequences in employing the extraordinary remedy of injunction." *Make the Road*, 419 F. Supp. 3d at 665. In election cases in particular, "where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

In making a determination as to the equities, a court may only issue an injunction if the balance of hardships tips in the plaintiff's favor. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (citing *Winter*, 555 U.S. at 20, and *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391

(2006)). Further, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction. *Salinger*, 607 F.3d at 80 (citing *eBay*, 547 U.S. at 391). In exercising their discretion in whether to enter an injunction, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *New York State Rifle & Pistol Ass'n v. City of N.Y.*, 86 F. Supp. 3d 249, 258 (S.D.N.Y. 2015), *aff'd sub nom. New York State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 883 F.3d 45 (2d Cir. 2018) (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

Here, the balance of equities tips decidedly in favor of the State, and against Plaintiffs. The State maintains strong interests in managing its elections, ensuring that an independent candidate has adequate public support within the district, and in avoiding voter confusion and ballot chaos. For their part, Plaintiffs' claim of the impossibility of obtaining the reduced number of petition signatures ring hollow given the current state of the opening of business in New York, with the relevant election districts now in "Phase Four" of the State's phased reopening plan.

Similarly, under the circumstances of this case, Plaintiffs must show that the "public interest weigh[s] in favor of granting the injunction." *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012). Plaintiffs cannot do so here as the public interest is best served by permitting the State to maintain its regulatory scheme, to require a showing of public support for Plaintiffs' candidacies, and to avoid voter confusion and ballot chaos. *See Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (when a party seeks to enjoin a government agency, it "must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own affairs") (quotation marks omitted).

The public interest here weighs further in favor of the *status quo* as a number of the remedies proposed by Plaintiffs would have severe consequences to New York's ability to fairly

hold the General Election in November. For instance, any proposal to further modify the schedule for signature gathering could negatively impact the ability of county boards of election to finalize ballots due to the required administrative and judicial challenge periods and the necessity of permitting time to print and distribute ballots. *See* Valentine Decl. at ¶¶ 16-17 ("with the independent petitioning period ending on July 30, 2020, there is a little over five weeks for the objection and litigation process to unfold before the September 9, 2020 ballot certification deadline"). In addition, any proposal to permit ballot petition signature by electronic means, which is not authorized by New York law, raises a number of election security and other issues that the current procedure avoids. *See also* Valentine Decl. at ¶¶ 9, 13 ("there is no established procedure for how electronically obtained and/or witnessed signatures would be administratively challenged or judicially reviewed. … Such a change would upend New York's statutory mechanism for authentication of signatures by means of witness attestation.").

Accordingly, the various elements of the requested injunction all run counter to the public interest in holding fair elections.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs'

motion for a temporary restraining order and preliminary injunction, together with such other

relief as the Court may award.

Dated: New York, New York
        July 23, 2020                                        Respectfully submitted,

                                                            LETITIA JAMES
                                                            Attorney General
                                                            State of New York
                                                            <u>Attorney for Defendants</u>


                                                    By:_  /s/ Seth J. Farber_____
                                                            Seth J. Farber
                                                            Assistant Attorney General
                                                            28 Liberty Street
                                                            New York, New York 10005
                                                            (212) 416-8029 (SJF)
                                                            Seth.Farber@ag.ny.gov