UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA E. EISEN and GARY A. GREENBERG,<br><br>    Plaintiffs,<br><br>v.<br><br>ANDREW M. CUOMO, Governor of New York, in his official capacity, PETER S. KOSINSKI, Co-Chair of the New York State Board of Elections, in his official capacity, DOUGLAS A. KELLNER, Co-Chair of the New York State Board of Elections, in his official capacity, and ANDREW J. SPANO, Commissioner of the New York State Board of Elections, in his official capacity,<br><br>    Defendants. | Case No.: 7:20-cv-05121-PMH-LNS |

### PLAINTIFFS' REPLY IN FURTHER
### SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

 

**VENABLE LLP**
600 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 344-4522

**-and-**

Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel: (212) 808-5670

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.     PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO PREVAIL ON THE MERITS ..... 3

II.    PLAINTIFFS WILL SUFFER IRREPERABLE HARM ABSENT INJUNCTIVE
      RELIEF ...................................................................................................................... 6

III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGHS
      STRONGLY IN FAVOR OF PLAINTIFFS ........................................................................ 7

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ................................................................................................................4

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ................................................................................................................4

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*,
   356 F.3d 226 (2d Cir. 2004) ....................................................................................................6

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................................................6

*Engquist v. Oregon Department of Agriculture*,
   553 US 591 (2008) ..................................................................................................................5

*Hirschfeld v. Bd. of Elections in N.Y.C*,
   984 F.2d 35 (2d Cir. 1993) ......................................................................................................8

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ................................................................................................................7

*Statharos v. New York City Taxi & Limousine Comm'n*,
   198 F.3d 317 (2d Cir. 1999) ....................................................................................................6

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ................................................................................................................4

*Williams v. Rhodes*,
   393 U.S. 23 (1968) ..................................................................................................................7

*Yang v. Kellner*,
   2020 WL 2129597 (S.D.N.Y. May 5, 2020) ...........................................................................7

**Statutes**

Electronic Signatures and Records Act ..........................................................................................9

N.Y. Election Law 6-142(2) .......................................................................................................3, 7

N.Y. Election Law § 4-114 .............................................................................................................8

N.Y. Election Law §§ 6-136 ...........................................................................................................4

**Other Authorities**


First Amendment ............................................................................................................2, 5, 7

Fourteenth Amendment ..........................................................................................................6

*As Coronavirus Infections Spike Among Young New Yorkers, Cuomo Warns Against Partying*, FORBES (July 23, 2020), https://www.forbes.com/sites/carlieporterfield/2020/07/23/as-coronavirus-infections-spike-among-young-new-yorkers-cuomo-warns-against-partying/#1122cd90389e .........................................................................................................1

*Online Voter Registration Debate Continues, with Court Challenge Possible*, Gotham Gazette (Dec. 15, 2017), https://www.gothamgazette.com/city/7371-online-voter-registration-debate-continues-with-court-challenge-possible .........................9, 10

Fed. R. Civ. P. 15(a)(1) ...........................................................................................................1

JOURNAL NEWS (July 7, 2020), https://www.lohud.com/story/news/coronavirus/2020/07/07/rockland-county-phase-4-reopening-plan/5390821002/ .....................................................................................2

N.Y. Exec. Order No. 202.7 ....................................................................................................9

N.Y. Exec. Order No. 202.7 (March 19, 2020) ......................................................................8

N.Y. Exec. Order No. 202.13 (March 30, 2020) ....................................................................9

N.Y. Exec. Order No. 202.14 (April 7, 2020) ........................................................................9

N.Y. Exec. Order No. 202.46 (June 30, 2020) ..............................................................3, 6, 7, 8

Nancy Cutler, *Coronavirus in Rockland: Day lauds Phase 4, but decries lack of plan for full opening* ...........................................................................................................2

Russell Redman, *Nearly 80% of U.S. consumers shopped online for groceries since COVID-19 outbreak* ....................................................................................................9

SUPERMARKET NEWS (May 27, 2020), https://www.supermarketnews.com/online-retail/nearly-80-us-consumers-shopped-online-groceries-covid-19-outbreak ..................9

*Twin Counties*, HUDSON VALLEY 360 (July 21, 2020), https://www.hudsonvalley360.com/news/publicservicenews/virus-cases-up-slightly-in-twin-counties/article_0b51bbd9-229b-5cc9-b449-1c3e62ed8258.html ................................................................................................................2

WRGB (July 23, 2020), https://cbs6albany.com/news/coronavirus/gov-cuomo-talks-covid-19-uptick-in-capital-region-dangers-of-reopening-too-quickly ..........................2

iii

**PRELIMINARY STATEMENT**

After reading Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction[1] (CM/ECF No. 31) (hereinafter, "Def. Br."), one would think things are completely back to normal in the State of New York. How else could Defendants assert with a straight face that Plaintiffs "essentially face the same burden that an individual would ordinarily have in attempting to run as an independent candidate," Def. Br. at 14, or that Plaintiffs' inability to obtain sufficient signatures is "a problem of their own making"? *Id*. at 2. Defendants insist that "[p]etition signatures can now be obtained safely, <u>subject to compliance with public health and social distancing guidelines</u>," *id*. at 2, yet they fail to recognize the paradox of that very statement or the reality that obtaining in-person, "wet" signatures from thousands of voters necessarily requires circulators and signers alike to violate those very directives.

In the three-day period since Defendants filed their opposition brief, the COVID-19 positivity rate for New Yorkers ages 21-30 has increased more than four percentage points, which Governor Cuomo called "a significant increase in a short period of time." *See* Carlie Porterfield, *As Coronavirus Infections Spike Among Young New Yorkers, Cuomo Warns Against Partying*, FORBES (July 23, 2020), https://www.forbes.com/sites/carlieporterfield/2020/07/23/as-coronavirus-infections-spike-among-young-new-yorkers-cuomo-warns-against-

---

[1] Defendants drop a footnote in their brief stating that Plaintiffs filed a letter application with the Court "seeking to modify the briefing schedule in order to permit Plaintiffs to, *inter alia*, file a declaration from Mr. Greenberg." Def. Br. at 1, n.1. This is not accurate. After filing the Amended Complaint (CM/ECF No. 28) to add Mr. Greenberg as a plaintiff pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiffs' counsel reached out to Defendants' counsel telephonically as a courtesy to offer additional time for Defendants to file their response brief in light of the additional plaintiff. Defendants' counsel accepted our offer to extend the briefing schedule subject to the Court's approval but wanted three (3) additional days (until Thursday, July 23, 2020 at 5:00 pm), to which Plaintiffs consented. However, in addition to the time extension, Defendants insisted that Plaintiffs file an additional motion with the Court in order for Mr. Greenberg to be a part of the preliminary injunction hearing, which would have entailed needlessly revising the previously filed application for preliminary injunction and supporting papers. We disagreed with defense counsel's position and instead filed a Joinder for Mr. Greenberg, along with his Declaration, which this Court granted on Tuesday, July 21, 2020, along with the requested time extensions. *See* Order on Motion for Extension of Time to File Response/Reply, July 21, 2020 (CM/ECF No. 32).

partying/#1122cd90389e. There has been a surge in COVID-19 cases in Greene and Columbia counties, two counties that make up a large part of Senate District 46. *See* Melanie Lekocevic, *Virus cases up slightly in Twin Counties*, HUDSON VALLEY 360 (July 21, 2020), https://www.hudsonvalley360.com/news/publicservicenews/virus-cases-up-slightly-in-twin-counties/article_0b51bbd9-229b-5cc9-b449-1c3e62ed8258.html. In his daily briefing just yesterday, July 23, 2020, Governor Cuomo "spoke about a recent uptick in COVID-19 cases in Albany county," stating, "[y]ou see Albany, Capital Region, we had just about 30 positives from one July 4th party: one party, 28 positives…You understand why we say one bad event, one bad group, can be a real problem. One party, 30 people." Gov. Cuomo talks COVID-19 uptick in Capital Region, dangers of reopening too quickly, WRGB (July 23, 2020), https://cbs6albany.com/news/coronavirus/gov-cuomo-talks-covid-19-uptick-in-capital-region-dangers-of-reopening-too-quickly.

Defendants place primary emphasis on the current Phase Four status of the state, as if this label has magically enabled candidates and petition circulators to freely and safely interact with residents to procure signatures, and utterly allayed people's widely held fear of interacting with or approaching strangers. This simply does not square with reality or Plaintiffs' experience in collecting signatures in this COVID-19 environment. *See* Decl. of Gary A. Greenberg in Supp. of Pl. Joshua Eisen's Application for Preliminary Injunction, executed July 21, 2020 ("Greenberg Decl.") (CM/ECF No. 30-1). It also does not align with the experience of county leaders in Plaintiffs' districts, including Rockland County Executive July 21, 2020 ("Greenberg Decl.") Ed Day, who said on July 7th, Rockland County's first day under Phase 4, that "[t]he governor and his staff promised the people of this state that (we) would be fully open…that's not the way it's happening." Nancy Cutler, *Coronavirus in Rockland: Day lauds Phase 4, but decries lack of*

*plan for full opening*, JOURNAL NEWS (July 7, 2020), https://www.lohud.com/story/news/coronavirus/2020/07/07/rockland-county-phase-4-reopening-plan/5390821002/. Despite New York's gradual reopening, the picture painted by Defendants is not one based on reality when it comes to Plaintiffs' experiences in circulating petitions.

## ARGUMENT

### I. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO PREVAIL ON THE MERITS

#### A. Plaintiffs are Substantially Likely to Succeed on Their First Amendment Claim

Defendants' assertion that "Plaintiffs essentially face the same burden that an individual would ordinarily have in attempting to run as an independent candidate" is belied by the actual facts on the ground. In Mr. Greenberg's case, he has worked tirelessly to gather signatures since July 1st, has enlisted over 35 volunteers to assist, and placed advertisements for paid circulators. Greenberg Decl. ¶4-5. Despite these efforts, he has generated little interest from his advertisement, and members of the public continue to consistently refuse to sign his petitions or get close to his volunteers for fear of contracting COVID-19 or being in violation of state and local social distancing directives. *Id*. Mr. Eisen has experienced the same level of rejections due to residents' health and compliance concerns. Decl. of Joshua E. Eisen Decl. in Supp. of Mot. for Preliminary Injunction, executed on July 10, 2020 ("Eisen Decl.") (CM/ECF No. 19).

Despite Defendants contention that such burdens are of a "limited magnitude," Def. Br. at 13, they have severely inhibited Plaintiffs' ability to gather the requisite signatures. The State simply cannot ingrain in New Yorkers that they must socially distance or face the consequences, and then require independent candidates and their circulators to directly violate such directives in order to exercise their constitutional rights.

3

The State's current requirements unquestionably constitute a severe burden on Plaintiffs under the analytic framework established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Accordingly, strict scrutiny must be applied, as "regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997). Defendants have failed to advance any interest other than the state's "interest in assuring that there is public support for their candidates." Def. Br. at 13 (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). If the State were defending its statutory signature requirements for independent candidates pursuant to N.Y. Election Law 6-142(2) under normal circumstances, this "modicum of support" interest would pass constitutional muster. However, in this case, the State must provide a compelling state interest for why it is requiring independent candidates to collect the same number of valid signatures, on a pro-rated basis, during a global pandemic where candidates and circulators must jeopardize public health and risk violating social distancing directives.[2] They have failed to do so.

Defendants also mischaracterize Plaintiffs' arguments with respect to the State's interest in regulating its elections. Plaintiffs have never argued that "the State has little or no countervailing interest in overseeing and regulating its elections in the present context." Def. Br. at 15. To the contrary, Plaintiffs take issue with the number of signatures currently required and the State's insistence on in-person signature collection and witnessing in the middle of a global pandemic. Of course, Defendants are fully aware that Plaintiffs do not dispute the State's interest

---

[2] Defendants explain in their July 16, 2020 Response to Plaintiff's Letter Motion (CM/ECF No. 26) that the State's reduction in signatures under Executive Order 202.46 was based on the adjusted petitioning period and did not take into account the inherent health risks associated with COVID-19 ("While the signature collection period was truncated to accommodate the overall election calendar from 41 days to 30 days (an approximate 27 percent reduction), as relevant here the signature requirement was reduced by 30 percent—from 3,500 to 2,450 signatures.").

4

in regulating its elections because we say so in our supporting memorandum. Plaintiffs' Memorandum of Law in Support of Application for Preliminary Injunction (CM/ECF No. 21), at 20 (hereinafter, "Pl. Br.").

### B. Plaintiffs are Substantially Likely to Succeed on Their Equal Protection Claim

In a shoddy attempt to defend its clear disparate treatment of independent candidates in the middle of a pandemic, Defendants resort to a "modicum of support" justification. Def. Br. at 15. But Plaintiffs do not dispute the well-established precedent that "requiring independent candidates to evidence a significant modicum of support is not unconstitutional." *See American Party of Texas*, 415 U.S. 767, 789 (1974). Nor do they take issue with the 3,500 and 3,000 signature thresholds that are required of independent congressional and state senate candidates under normal circumstances. With that said, Defendants cannot use the same "modicum of support" justification as a pretext for making it even harder for independent candidates to obtain ballot access by way of providing significantly less relief compared to that afforded to major party candidates. The fact remains that the legislature accounted for these interests when it crafted the statutory signature requirements for major party and independent candidates. *See* N.Y. Election Law §§ 6-136; 6-142. There is no rational basis for the State's additional layer of disparate treatment toward independent candidates in this case.

Defendants' "class of one" arguments are equally unavailing. A person is a "class-of-one" when he or she alleges that the government is subjecting only him or her to differing and unique treatment compared to others similarly situated. *See Engquist v. Oregon Department of Agriculture*, 553 US 591 (2008). In this case, two individuals are alleging that the State is treating them and other independent candidates differently, when compared to party candidates, with respect to COVID-19-related ballot access relief and signature reductions. This is despite

the fact that all types of candidates are experiencing the same global pandemic, and all seek the ultimate goal of appearing on the general election ballot.

## II. PLAINTIFFS WILL SUFFER IRREPERABLE HARM ABSENT INJUNCTIVE RELIEF

Plaintiffs have shown irreparable harm because they face a violation of their constitutional rights. In First Amendment cases, irreparable harm is presumed. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Moreover, in the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. *See, e.g.*, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury."); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.").

Defendants spend three pages of their brief erroneously arguing that Plaintiffs will somehow not suffer irreparable harm because, *inter alia*, their districts are currently in Phase 4 of New York's recovery. Def. Br. at 18-20. In making such tangential and irrelevant arguments, Defendants have conveniently failed to acknowledge the well-established precedent in the Second Circuit that even an "alleged violation of a constitutional right triggers a finding of irreparable injury." *Connecticut Dep't of Envtl. Prot.*, 356 F.3d at 231.

In this case, Plaintiffs have alleged that Defendants are violating their constitutional rights under the First and Fourteenth Amendments through enforcement of the current independent candidate ballot qualification requirements, as modified by Executive Order 202.46. That in itself is sufficient to show irreparable harm.

6

### III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGHS STRONGLY IN FAVOR OF PLAINTIFFS

The balance of equities tips strongly in favor of Plaintiffs. Defendants state that courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Def. Br. at 21 (citing *New York State Rifle & Pistol Ass'n v. City of N.Y.*, 86 F. Supp. 3d 249, 258 (S.D.N.Y. 2015). In this case, there are no apparent consequences for the public. To the contrary, there are significant consequences for the public if this Court does not provide injunctive relief, as the "the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams v. Rhodes*, 393 U.S. 23, 31 (1968).

Defendants also suggest that making changes to the ballot requirements at this point should be avoided due to the proximity to the election. However, the legislative redistricting case Defendants cite in support of this proposition is not helpful to their cause. Defendants state that "in election cases in particular, 'where an impending election is imminent and the State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief'" Def. Br. at 21 (citing *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). If Defendants had chosen to be transparent with the Court, they would have included the next part of the sentence, which reads, "…effective relief <u>in a legislative apportionment case</u>." *Reynolds*, 377 U.S. at 585. Apparently, Defendants did not feel it was necessary to inform the Court that the Supreme Court was only referring to redistricting cases when it decided *Reynolds* in 1964.

With respect to the public's interest, this Court has stated as recently as May that "[s]ecuring First Amendment rights is in the public interest." *Yang v. Kellner*, 2020 WL 2129597, at *12 (S.D.N.Y. May 5, 2020). The Second Circuit has also made clear that "the

7

public has an interest in being presented with several viable options in an election," including the option to vote for independent candidates. *See Hirschfeld v. Bd. of Elections in N.Y.C*, 984 F.2d 35, 39 (2d Cir. 1993). To the contrary, the state's current independent candidate ballot access requirements undermine the public interest by jeopardizing Plaintiffs' health, and that of their circulators and potential signers, all the while effectively excluding large swaths of the population (e.g. the elderly and immunocompromised) from participating altogether due to the insistence of in-person, "wet" signatures.

To counter these arguments, Defendants state that the public interest is instead "best served by permitting the State to maintain its regulatory scheme, to require a showing of public support for Plaintiffs' candidacies, and to avoid voter confusion and ballot chaos." Def. Br. at 21-22. But the legislature already accounted for this "modicum of support" requirement when it passed N.Y. Election Law 6-142(2) and imposed specific signature thresholds for independent candidates. To be clear, the justification for the arbitrary and prejudicial changes to the independent candidate requirements under Executive Order 202.46 were NOT based on the state's interest in such candidates showing a "modicum of support."

Defendants also state that Plaintiffs' proposed remedies "would have severe consequences" for New York's ability to hold fair elections. To illustrate these "severe consequences," Defendants have submitted at the eleventh hour the Declaration of Mr. Todd Valentine, Co-Executive Director of the New York State Board of Elections, who assures the Court that "[n]o part of the petitioning process is uniquely difficult as compared to ordinary commercial interactions widely practiced by New Yorkers daily." Decl. of Todd D. Valentine in Opp. to Pl. Application for Preliminary Injunction, executed July 23, 2020 ("Valentine Declaration"), ¶ 12. He even likens the petitioning process to "paying for goods and transferring

bags from one person to another at places like the grocery store." *Id*. Mr. Valentine might be dismayed to learn that 80 percent of U.S. consumers have shopped online for groceries since the beginning of the pandemic due to the health risks. Russell Redman, *Nearly 80% of U.S. consumers shopped online for groceries since COVID-19 outbreak*, SUPERMARKET NEWS (May 27, 2020), https://www.supermarketnews.com/online-retail/nearly-80-us-consumers-shopped-online-groceries-covid-19-outbreak.

Mr. Valentine also speculates about the "severe consequences" any extension of the petitioning period would have on New York's ability to certify and print general election ballots on time. This argument also holds no water, as the first hard deadline the state must meet under state law is the ballot certification on September 9, 2020, more than five weeks after the existing petitioning period. N.Y. Election Law § 4-114. However, Defendants point to an objection and judicial challenge period of less than five weeks. Any minimal extension of the petitioning period past July 30, 2020 by this Court would therefore not result in "severe consequences" for the State or its ability to meet such deadlines.

Defendants' and Mr. Valentine's contention about electronic signatures and virtual attestation also rings hollow. Defendants fail to meaningfully explain their opposition to such commonsense safety measures other than to point to "election security and other issues." Def. Br. at 29. It strains credulity for the state to cite security issues in this context when Governor Cuomo has facilitated electronic signatures and virtual attestation and notarization in so many other areas of state law. *See* Tyrrell Decl., Ex. 13 (N.Y. Exec. Order No. 202.7 (March 19, 2020)); Ex. 14 (N.Y. Exec. Order No. 202.14 (April 7, 2020)); 2Ex. 11 (N.Y. Exec. Order No. 202.13 (March 30, 2020)) (CM/ECF No. 20). In particular, permitting remote witnessing of petitions through virtual audio-video technology would be no different than Governor Cuomo's

relaxation of the in-person requirements for notaries public in light of the pandemic. *See* Tyrrell Decl., Ex. 13 (N.Y. Exec. Order No. 202.7).

Moreover, Defendants cannot argue that New York would be unable to facilitate the acceptance of electronic signatures simply because "[t]here is no procedure or precedent in New York law for filing electronic ballot access signatures." Valentine Decl. ¶9. Numerous states have facilitated electronic signatures in the ballot petition context during the COVID-19 pandemic despite not having previous experience with the process. In fact, Florida, New Jersey, Utah, Minnesota, Michigan, Massachusetts, Rhode Island, and Maryland all allow petitions to be signed and/or verified electronically due to the COVID-19 pandemic. *See* Tyrrell Decl., Ex. 1 (Compl. ¶ 49). Like New York, these states had "no procedure or precedent" for "filing electronic ballot access signatures" prior to the pandemic. Valentine Decl. ¶9. Defendants' justification for their opposition to electronic and/or virtual signature gathering is simply without merit.

Lastly, Mr. Valentine has a history of animus toward measures that provide for electronic signatures in the election and voting context. When New York City passed a bill providing for online voter registration for city residents in 2017, Mr. Valentine came out strongly against the measure, "insisting that [electronic signatures] do not meet the standards for an affidavit under the Electronic Signatures and Records Act." Samar Khurshid, *Online Voter Registration Debate Continues, with Court Challenge Possible*, Gotham Gazette (Dec. 15, 2017), https://www.gothamgazette.com/city/7371-online-voter-registration-debate-continues-with-court-challenge-possible. This is despite the fact that a memo from former Attorney General Schneiderman found such measures to be consistent with state law.  Interestingly, one of the Defendants in this case, Mr. Kellner, criticized Mr. Valentine at the time for "rejecting such a common sense measure." *Id*.

Case 7:20-cv-05121-PMH   Document 35   Filed 07/24/20   Page 15 of 15

Dated: July 24, 2020

          Respectfully submitted,

          VENABLE LLP

By:   */s/ James E. Tyrrell III*
      James E. Tyrrell III*
      Jacob P. Tully*
      600 Massachusetts Avenue NW
      Washington, DC 20001
      Tel: (202) 344-4522
      Fax: (202) 344-8300
      JETyrrell@venable.com

      *Admitted Pro Hac Vice*

      -and-

      Michael A. Guerra
      Rockefeller Center
      1270 Avenue of the Americas, 24th Floor
      New York, NY 10020
      Tel: (212) 808-5670
      Fax: (212) 307-5598
      MAGuerra@Venable.com

      *Attorneys for Plaintiffs*

11